1

2

3

4

5

6                   UNITED STATES DISTRICT COURT

7                        DISTRICT OF NEVADA

8                               * * *

9    JESSE ARON ROSS,                    Case No. 2:17-cv-02386-APG-GWF

10                          Plaintiff,   SCREENING ORDER AND BRIEFING
                                         SCHEDULE FOR PRELIMINARY
11       v.                              INJUNCTION

12   BRIAN SANDOVAL et al.,                    (ECF Nos. 2, 7, 8)

13                         Defendants.

14

15          Plaintiff, who is a prisoner in the custody of the Nevada Department of Corrections

16   ("NDOC"), has submitted a first amended civil rights complaint pursuant to 42 U.S.C. §

17   1983 and has filed an application to proceed *in forma pauperis*, a motion to file additional

18   pages to form complaint, a motion to waive NRS § 41A.071 requirements, and a motion

19   for preliminary injunction. (ECF No. 2, 6, 6-1, 7, 8). The matter of the filing fee shall be

20   temporarily deferred.[1]   The Court now screens Plaintiff's first amended civil rights

21   complaint pursuant to 28 U.S.C. § 1915A and addresses the remaining motions.

22   **I.    SCREENING STANDARD**

23          Federal courts must conduct a preliminary screening in any case in which a

24   prisoner seeks redress from a governmental entity or officer or employee of a

25   governmental entity. *See* 28 U.S.C. § 1915A(a). In its review, the court must identify any

26   cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim

27   _____

28          [1] The Court considers Plaintiff's application to proceed *in forma pauperis* (ECF
     No. 6) complete when looking at documents ECF No. 5 and 6.

upon which relief may be granted or seek monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b)(1),(2). *Pro se* pleadings, however, must be liberally construed. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) the violation of a right secured by the Constitution or laws of the United States, and (2) that the alleged violation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

In addition to the screening requirements under § 1915A, pursuant to the Prison Litigation Reform Act (PLRA), a federal court must dismiss a prisoner's claim, if "the allegation of poverty is untrue," or if the action "is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2). Dismissal of a complaint for failure to state a claim upon which relief can be granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and the court applies the same standard under § 1915 when reviewing the adequacy of a complaint or an amended complaint. When a court dismisses a complaint under § 1915(e), the plaintiff should be given leave to amend the complaint with directions as to curing its deficiencies, unless it is clear from the face of the complaint that the deficiencies could not be cured by amendment. *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995).

Review under Rule 12(b)(6) is essentially a ruling on a question of law. *See Chappel v. Lab. Corp. of America*, 232 F.3d 719, 723 (9th Cir. 2000). Dismissal for failure to state a claim is proper only if it is clear that the plaintiff cannot prove any set of facts in support of the claim that would entitle him or her to relief. *See Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999). In making this determination, the court takes as true all allegations of material fact stated in the complaint, and the court construes them in the light most favorable to the plaintiff. *See Warshaw v. Xoma Corp.*, 74 F.3d 955, 957 (9th Cir. 1996). Allegations of a *pro se* complaint are held to less stringent standards than formal pleadings drafted by lawyers. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980). While

the standard under Rule 12(b)(6) does not require detailed factual allegations, a plaintiff must provide more than mere labels and conclusions. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A formulaic recitation of the elements of a cause of action is insufficient. *Id.*

Additionally, a reviewing court should "begin by identifying pleadings [allegations] that, because they are no more than mere conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported with factual allegations." *Id.* "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

Finally, all or part of a complaint filed by a prisoner may therefore be dismissed *sua sponte* if the prisoner's claims lack an arguable basis either in law or in fact. This includes claims based on legal conclusions that are untenable (e.g., claims against defendants who are immune from suit or claims of infringement of a legal interest which clearly does not exist), as well as claims based on fanciful factual allegations (e.g., fantastic or delusional scenarios). *See Neitzke v. Williams*, 490 U.S. 319, 327-28 (1989); *see also McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

## II.    SCREENING OF FIRST AMENDED COMPLAINT[2]

In the first amended complaint, Plaintiff sues multiple defendants for events that took place while Plaintiff was incarcerated at High Desert State Prison ("HDSP"). (ECF No. 6-1 at 1). Plaintiff sues Defendants Adam Laxalt, Brian Sandoval, Warden Brian Williams, Correctional Officer Vaughn, Dr. Leaks, Dr. Magapah, Warden Dwight Neven, NDOC Director James Cox, NDOC Director James Dzurenda, Nurse J. Torress, Chaplin

_____

[2] The Court grants Plaintiff's motion to add pages to the form complaint. (ECF No. 2).

- 3 -

1   Julio Caldrin, KT Industries (contracted vendor), Lieutenant Owens, Lieutenant Plumlee,

2   Lieutenant Provencial, Deputy Director Q. Byrne, Medical Director Romeo Aranas,

3   Sergeant Ontiveras, State of Nevada ex rel NDOC[3], and John/Jane Does.  (*Id.* at 2-8).

4   Plaintiff alleges 18 counts of federal and state law claims and seeks monetary,

5   declaratory, and injunctive relief.  *Id.* at 10, 42).

6       **A.    Federal Constitutional Claims**

7            **i.    Count I**

8        In Count I, Plaintiff sues KT Industries, Dr. Leaks, Neven, Aranas, Williams, and

9   Cox for deliberate indifference to serious medical needs.  (ECF No. 6-1 at 13).  Plaintiff

10  alleges the following:  On May 1, 2015, July 1, 2015, and June 16, 2016, Plaintiff filed

11  medical and regular inmate request forms for medically necessary eyeglasses.  (*Id.*)

12  Plaintiff has extremely poor vision.  (*Id.*)  On March 4, 2017, Plaintiff saw Dr. Leaks of KT

13  Industries.  (*Id.*)  This was 670 days after Plaintiff's initial request.  (*Id.*)  During this period

14  of time, Plaintiff suffered from headaches, blurry vision, and had his nose broken by a

15  soccer ball because he could not see the ball until it was too close to deflect.  (*Id.*)  Plaintiff

16  would have been able to deflect the soccer ball had he had eyeglasses.  (*Id.*)  Dr. Leaks

17  and KT Industries failed to see Plaintiff in a reasonable period of time.  (*Id.*)  Neven,

18  Williams, Cox, Dzurenda, and Aranas failed to create customs, policies, and practices,

19  and failed to train and supervise the optometry staff.  (*Id.* at 13-14). KT Industries was the

20  private corporation contracted to provide optometry services for the prison.  (*Id.* at 14).

21  _____

22      [3] The Court dismisses Defendant State of Nevada ex rel NDOC with prejudice from
23  the entirety of this case, as amendment would be futile.  Plaintiff can neither raise 42
    U.S.C. § 1983 claims nor state law claims against the State of Nevada based on Eleventh
24  Amendment sovereign immunity.  *See Brooks v. Sulphur Springs Valley Elec. Co-op.*,
    951 F.2d 1050, 1053 (9th Cir. 1991) (holding that "[t]he Eleventh Amendment prohibits
25  federal courts from hearing suits brought against an unconsenting state" and that "[t]he
    Eleventh Amendment's jurisdictional bar covers suits naming state agencies and
26  departments as defendants, and applies whether the relief sought is legal or equitable in
    nature"); *see also Will v. Michigan Dep't of State Police*, 491 U.S. 58, 65 (1989) (holding
27  that states are not persons for purposes of § 1983); *see* NRS § 41.031(3) (stating that the
    State of Nevada does not waive its Eleventh Amendment immunity).  The Ninth Circuit
28  has held explicitly that 28 U.S.C. § 1367, the supplemental jurisdiction statute, "does not
    abrogate state sovereign immunity for supplemental state law claims."  *Stanley v.
    Trustees of California State Univ.*, 433 F.3d 1129, 1133-34 (9th Cir. 2006).

Sandoval and Laxalt, as prison commissioners, failed in their duty to hire and retain staff. (*Id.*)

The Eighth Amendment prohibits the imposition of cruel and unusual punishment and "embodies 'broad and idealistic concepts of dignity, civilized standards, humanity, and decency.'" *Estelle v. Gamble*, 429 U.S. 97, 102 (1976). A prison official violates the Eighth Amendment when he acts with "deliberate indifference" to the serious medical needs of an inmate. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). "To establish an Eighth Amendment violation, a plaintiff must satisfy both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012).

To establish the first prong, "the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal quotations omitted). To satisfy the deliberate indifference prong, a plaintiff must show "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Id.* "Indifference may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *Id.* (internal quotations omitted). When a prisoner alleges that delay of medical treatment evinces deliberate indifference, the prisoner must show that the delay led to further injury. *See Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985) (holding that "mere delay of surgery, without more, is insufficient to state a claim of deliberate medical indifference").

The Court finds that Plaintiff fails to allege a colorable claim for deliberate indifference to serious medical needs at this time but grants Plaintiff leave to amend. Although Plaintiff filed three requests to see an optometrist about glasses, Plaintiff has not identified who he filed his requests with and has not identified who responded to his

requests and what they told him. There are no allegations in the complaint that Dr. Leaks knew that Plaintiff had requested medical treatment prior to seeing Plaintiff in March 2017. Additionally, Plaintiff has not alleged that any other defendant in this count even knew about Plaintiff's need for eyeglasses. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (holding that "[a] supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them. There is no respondeat superior liability under [§]1983"). As such, the Court dismisses this count, without prejudice, with leave to amend.

Upon amendment, Plaintiff should not lump defendants together but should, instead, describe exactly what each specific defendant, by name, did to violate his rights. Plaintiff should also describe who he filed his medical requests with and what their responses were.

### ii. Count III

In Count III, Plaintiff sues Laxalt, Sandoval, Aranas, Williams, Neven, Torress, and John Doe #1 for deliberate indifference to serious medical needs. (ECF No. 6-1 at 17). Plaintiff alleges the following: On April 8, 2016, a soccer ball broke Plaintiff's nose. (*Id.*) Plaintiff sustained two black eyes, two small lacerations on the right side of his face where the bone from the nasal cavity protruded, partial neurological paralysis, and a deviated septum. (*Id.*) Plaintiff notified an officer who asked Plaintiff if he wished to call a man down. (*Id.*) Plaintiff stated he would submit a kite on Monday because the case was urgent but not an emergency. (*Id.*)

On April 9, 2016, Plaintiff submitted his kite to Torress. (*Id.*) Torress looked at Plaintiff's face and told Plaintiff to "drink some water, you'll be ok in the morning." (*Id.*) On April 18, 2016 and May 12, 2016, Plaintiff filed more medical requests. (*Id.*) On April 11, 2016, Plaintiff was forced to fix his own nose in his cell. (*Id.* at 17-18).

Plaintiff did not receive further treatment until November 29, 2016. (*Id.* at 18). Plaintiff told Doctor John Doe #1 that he still had partial facial neurological paralysis and

"extremely bad headaches." (*Id.*)  John Doe #1 prescribed ibuprofen and ordered x-rays. (*Id.*)  When Plaintiff asked for a neurological evaluation, John Doe #1 stated, "The state is not gonna pay for that.  [You're] done." (*Id.*)  After Plaintiff received x-rays, he received no further treatment because the doctors refused to treat Plaintiff's neurological paralysis and pain. (*Id.*)  Plaintiff still suffers from paralysis and extreme headaches more than a year later. (*Id.*)  The medical delivery system at HDSP is deficient due to Laxalt, Sandoval, Aranas, Neven, Dzurenda, and Cox's failures. (*Id.*)

The Court finds that Plaintiff fails to state a colorable claim for deliberate indifference to serious medical needs but grants Plaintiff leave to amend.  *See* Count I, Part II.A.i. *supra*, for a discussion of the Eighth Amendment legal standard for deliberate indifference to serious medical needs.  Based on the allegations, Plaintiff saw Torress and John Doe #1 each one time.  This is not enough to establish that these defendants purposefully failed to respond to Plaintiff's pain or medical needs.  Upon amendment, Plaintiff should include details about who he submitted his medical requests to, what he wrote in the requests, who responded to the requests, and how did they respond.  If Plaintiff spoke to Torress or John Doe #1 on more than one occasion about his injuries, he should describe those occasions.  Plaintiff also fails to allege a supervisory liability claim against the remaining defendants in this count.  As such, the Court dismisses this count, without prejudice, with leave to amend.

### iii.    Counts V and VIII

In Count V, Plaintiff sues Laxalt, Sandoval, Russell, Byrne, Williams, and Dzurenda for an Eighth Amendment conditions of confinement claim.  (ECF No. 6-1 at 21).  Plaintiff alleges the following:  From November 5, 2016 to the date Plaintiff submitted the amended complaint[4], Plaintiff was housed in a protective segregation unit.  (*Id.*)  During this time, Plaintiff experienced excessive lock down periods and only received four hours of outdoor exercise per week.  (*Id.*)  Between January 1, 2017 and August 14, 2017, there were 128

_____

[4] Plaintiff submitted the amended complaint on September 25, 2017.  (ECF No. 6-1).

eligible yard days scheduled but prison officials cancelled or delayed 27 of those days. (*Id.*) Plaintiff averaged 4 hours of time outside per week during a 168-hour week. (*Id.*) At other NDOC prisons that were at the same level as Plaintiff, inmates received up to 10 hours per day of yard time or 70 hours per week. (*Id.*) Sandoval, Laxalt, Dzurenda, and Byrne failed to supervise Williams and Russell, who unlawfully restricted Plaintiff's outdoor access. (*Id.*) Plaintiff receives one-hour outdoors on Mondays, Tuesdays, Wednesdays, and Thursdays and no yard time on Fridays, Saturdays, or Sundays. (*Id.* at 22).

Although Plaintiff is scheduled for 4 hours a week, prison officials often delayed yard or cancelled yard. (*Id.*) On February 7, 2017, Plaintiff received 39 of the 60 minutes and, on January 12, 2017, Plaintiff received 17 of the 60 minutes. (*Id.*) On May 2 and 4, 2017, prison officials cancelled yard for a staff party. (*Id.*)

Plaintiff has been clinically diagnosed with clinical depression and anxiety and is on the maximum psychotropic medication for each. (*Id.*) The lack of outdoor yard has substantially exacerbated Plaintiff's panic attacks, extreme chest pain, hypertension, muscle atrophy, depression, anxiety, anger, sadness, and suicidal ideation. (*Id.*)

In response to Plaintiff's grievances, Williams responded, "unit 11 is scheduled for 8 hours of yard a week, this falls within federal guidelines" even though Plaintiff only received 4 hours of yard a week. (*Id.*) In response to Plaintiff's second level grievance, Byrne refused to remedy the constitutional violation. (*Id.*)

In Count VIII, Plaintiff sues Laxalt, Owens, Russell, Dzurenda, and Williams for Fourteenth Amendment due process violations. (*Id.* at 26). From January 1, 2017 through August 8, 2017, prison officials scheduled four days per week of yard time for one hour each for protective segregation inmates. (*Id.*) During that period of time, there were 128 eligible yard days. (*Id.*) Prison officials "unreasonably delayed" or cancelled 25 of those days. (*Id.*) Owens, Russell, and Williams caused the delays or cancellations. (*Id.*) The other defendants failed to train and supervise Owens, Russell, and Williams. (*Id.*) These defendants deprived Plaintiff of his liberty. (*Id.*)

The Court construes Counts V and VIII as Eighth Amendment conditions of confinement claims. Plaintiff cannot state a Fourteenth Amendment due process claim for the denial of outside yard time because he cannot establish that he has a liberty interest in receiving outdoor yard time.

The "treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993). Conditions of confinement may, consistent with the Constitution, be restrictive and harsh. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). However, "[p]rison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety." *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000). When determining whether the conditions of confinement meet the objective prong of the Eighth Amendment analysis, the court must analyze each condition separately to determine whether that specific condition violates the Eighth Amendment. *See Wright v. Rushen*, 642 F.2d 1129, 1133 (9th Cir. 1981). As to the subjective prong of the Eighth Amendment analysis, prisoners must establish prison officials' "deliberate indifference" to the unconstitutional conditions of confinement to establish an Eighth Amendment violation. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). When considering the conditions of confinement, the court should consider the amount of time to which the prisoner was subjected to the condition. *Hearns v. Terhune*, 413 F.3d 1036, 1042 (9th Cir. 2005).

The Ninth Circuit has recognized that "[d]eprivation of outdoor exercise violates the Eighth Amendment rights of inmates confined to continuous and long-term segregation." *Keenan v. Hall*, 83 F.3d 1083,1089 (9th Cir. 1996). However, "a temporary denial of outdoor exercise with no medical effects is not a substantial deprivation." *May v. Baldwin*, 109 F.3d 557, 565 (9th Cir. 1997).

The Court finds that Plaintiff states colorable conditions of confinement claims in Counts V and VIII. Based on the allegations, Plaintiff has, at most, received 4 hours of yard time per week for a year even though the warden states that Plaintiff is scheduled

for 8 hours per week. However, based on the allegations, Plaintiff receives less than 4 hours a week due to lockdowns, cancellations, and delays. As a result, Plaintiff has experienced an increase in both physical and mental health issues. This is sufficient to state a colorable claim on screening. Counts V and VIII will proceed against Defendants Owens, Williams, Russell, and Byrne. However, the Court dismisses Defendants Laxalt, Sandoval, and Dzurenda, without prejudice, from these counts because there are no allegations that they knew of or participated in Plaintiff's yard time schedule. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (holding that "[a] supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them. There is no respondeat superior liability under [§]1983").

### iv. Count IX

In Count IX, Plaintiff sues Laxalt, Sandoval, Dzurenda, and Cox for Eighth Amendment conditions of confinement violations related to adequate sanitation. (ECF No. 6-1 at 27). From July 31, 2015 to August 8, 2017, prison officials housed Plaintiff in protective segregation. (*Id.*) During that period of time, prison officials failed to provide bathroom access during yard time. (*Id.*) HDSP was located in an arid region and Plaintiff needed to hydrate. (*Id.*) On several occasions, Plaintiff soiled himself. (*Id.*) On other occasions, Plaintiff had to urinate openly on the yard in front of other inmates. (*Id.*) Other offenders were forced to urinate and defecate on the yard causing unsanitary conditions. (*Id.*) All of the above-named defendants failed to create policies, customs, and practices to ensure that Plaintiff had access to sanitary conditions. (*Id.*)

The Court dismisses this count with leave to amend. There are no allegations that Laxalt, Sandoval, Dzurenda, or Cox knew that Plaintiff was unable to use the bathroom during yard time and, as a result, often had to soil himself or urinate on the yard. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (holding that "[a] supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them. There

is no respondeat superior liability under [§]1983").  Upon amendment, Plaintiff should describe which correctional officers prevented Plaintiff from using the bathroom during yard, who he informed of the bathroom-yard problems, and their responses.

### v.  Count XI

In Count XI, Plaintiff sues Laxalt, Sandoval, Russell, Dzurenda, and Williams for 42 U.S.C. § 1985(2), (3) conspiracy for tortious interference with access to the courts.  (ECF No. 6-1 at 29).  Plaintiff alleges the following:  Dzurenda, Williams, and Russell jointly conspired to create a grievance process that was so difficult to navigate as to make it unavailable.  (*Id.*)  Defendants restricted inmates to only filing one grievance per week and rejected meritorious grievances in a frivolous manner barring lawsuits under the PLRA and NRS § 41.032. (*Id.*)  Laxalt and Sandoval failed to supervise and train.  (*Id.*)

The Court dismisses this count, with prejudice, as amendment would be futile.  Plaintiff's underlying argument is that he cannot exhaust the grievance process because the grievance process is too complicated, thus, preventing him from filing lawsuits under the PRLA and state statute equivalents.  The Court finds that this argument is meritless.  In *Ross v. Blake*, 136 S. Ct. 1850 (2016), the Supreme Court held that, "[a]n inmate . . . must exhaust available remedies, but need not exhaust unavailable ones."  *Id.* at 1858.  The Supreme Court held that a court may find that the grievance process is unavailable if prison officials thwart inmates through "machination, misrepresentation, or intimidation."  *Id.* at 1860.  Accordingly, the Supreme Court provides a way for inmates to file lawsuits under the PLRA without exhausting if the inmate can show that the grievance process is "unavailable" by prison officials.  Such inmates still have access to the courts.

### vi.  Count XII

In Count XII, Plaintiff sues Laxalt, Sandoval, Cox, Neven, Dzurenda, and Williams for conditions of confinement violations.  (ECF No. 6-1 at 30).  Plaintiff alleges the following:  From July 24, 2015 through November 5, 2016, Plaintiff was housed in the protective segregation unit.  (*Id.*)  During that time, "Defendants" installed and maintained technology devices which restricted toilet use in Plaintiff's unit.  (*Id.*)  Plaintiff and other

inmates in the unit could only flush their cell toilets once every 20 minutes. (*Id.*) The toilets often did not completely flush and left fecal matter in the toilets. (*Id.*) As a result, the cells and dayroom smelled like raw sewage. (*Id.*) Plaintiff would not use his cell toilet until his cellmate was out "to tier." (*Id.*) Laxalt and Sandoval failed to implement policies, customs, practices, and to train and supervise prison administrators about adequate sanitation. (*Id.*)

The Court finds that Plaintiff fails to state a colorable claim for conditions of confinement violations but grants leave to amend. *See* Counts V and VIII, Part III.A.iii. *supra*, for a discussion of the Eighth Amendment legal standard for conditions of confinement violations. The Court notes that Plaintiff has lumped "Defendants" together in this claim but has not described exactly what each specific defendant, by name, did to violate Plaintiff's rights. Upon amendment, Plaintiff should note that a defendant is liable under 42 U.S.C. § 1983 "only upon a showing of personal participation by the defendant." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them. There is no respondeat superior liability under [§]1983." *Id.*; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (holding that "[b]ecause vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution"). As such, upon amendment, Plaintiff should allege who he reported the sanitation issues to, when he did so, and what the responses were.

### vii.    Count XIII

In Count XIII, Plaintiff sues Laxalt, Sandoval, Provencial, Owens, Plumlee, Russell, Vaughn, Ontiveras, Dzurenda, Cox, and Williams for Eighth Amendment sexual harassment and verbal abuse. (ECF No. 6-1 at 31). Plaintiff alleges the following: On September 2016, Provencial made "sexually derisive comments" to Plaintiff in front of other inmates and officers in front of the dining hall. (*Id.*) Provencial told Plaintiff "not [to]

be offended." (*Id.*)

On May 20, 2016, after a fight in the dining room, Provencial stated that he wanted an "excuse to blow someone's face off," referring to Plaintiff and other inmates. (*Id.*) On October 26, 2016, while working the gun rail, Vaughn, screamed and yelled "profanity laced epithets" at Plaintiff and other inmates in the dining hall. (*Id.*) Ontiveras threatened to "tune [Plaintiff] up" over a mistaken identity. (*Id.* at 33).

The Court finds that Plaintiff fails to state a colorable Eighth Amendment claim for verbal harassment and verbal sexual harassment. The Eighth Amendment's protections do not generally extend to mere verbal sexual harassment. *Austin v. Terhune*, 367 F.3d 1167, 1171 (9th Cir. 2004). Additionally, verbal harassment or abuse is not sufficient to state a constitutional deprivation under 42 U.S.C. § 1983. *Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987). As such, the Court dismisses this count, with prejudice, as amendment would be futile.

### viii.    Count XV

In Count XV, Plaintiff sues Laxalt, Sandoval, Williams, and Caldrin for violations of the Free Exercise Clause, RLUIPA, Equal Protection Clause, and conspiracy. (ECF No. 6-1 at 36). Plaintiff alleges the following: On February 3, 2016, April 5, 2016, and April 27, 2016, Plaintiff submitted a religious/spiritual belief diet accommodation request and registration form to Caldrin. (*Id.*) Since 2012, Plaintiff has been registered as a Buddhist with the NDOC. (*Id.*) Plaintiff is devout and sincere in his beliefs. (*Id.*) Plaintiff sincerely believes that a vegetable/plant based diet is absolutely necessary to fully practice his religion. (*Id.*) Plaintiff explained this to Caldrin and offered to compromise and take the common fare diet offered to Muslim and Jewish inmates because that diet closely complied with Plaintiff's religious needs. (*Id.* at 37). Caldrin and Williams denied Plaintiff access to this compromise and any other spiritual diet. (*Id.*) Plaintiff was similarly situated to Muslim and Jewish inmates but was being treated unequally. (*Id.*)

As an initial matter, there are no allegations in this count that would support a claim for conspiracy. As such, the Court dismisses that portion of the claim without prejudice.

The Court now addresses the free exercise, RLUIPA, and equal protection claims.

The First Amendment to the United States Constitution provides that Congress shall make no law respecting the establishment of religion or prohibiting the free exercise thereof. U.S. Const. amend. I. The United States Supreme Court has held that inmates retain protections afforded by the First Amendment "including its directive that no law shall prohibit the free exercise of religion." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987). The Supreme Court has also recognized that an inmate's "limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives–including deterrence of crime, rehabilitation of prisoners, and institutional security." *Id.* During summary judgment, courts evaluate prison regulations alleged to infringe on constitutional rights under the "reasonableness" test set forth in *Turner v. Safley*, 482 U.S. 78, 89-91 (1987). *Shabazz*, 482 U.S. at 349; *see Hrdlicka v. Reniff*, 631 F.3d 1044, 1046-50 (9th Cir. 2011) (analyzing the *Turner* factors applied during summary judgment on appeal).

The Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA") provides in relevant part:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . unless the government demonstrates that imposition of the burden on that person–(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a)(1)-(2). "Claims brought under RLUIPA are subject to a strict scrutiny standard, which replaces the reasonableness standard employed in cases involving constitutional violations." *Shilling v. Crawford*, 536 F.Supp.2d 1227, 1232 (D. Nev. 2008).

RLUIPA broadly defines "religious exercise" as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C.A. § 2000cc-5(7)(A). "RLUIPA is to be construed broadly in favor of protecting an inmate's right to exercise his religious beliefs." *Warsoldier v. Woodford*, 418 F.3d 989, 995 (9th Cir. 2005) (citing 42 U.S.C.A. § 2000cc-3(g)). The plaintiff bears the burden of demonstrating a

prima facie claim that the prison's policies or actions constitute a substantial burden on the exercise of his religious beliefs. *Id.* at 994.

The Court finds that Plaintiff states colorable free exercise and RLUIPA claims. Based on the allegations, Caldrin and Williams are preventing Plaintiff from exercising his sincerely held religious belief of eating a vegetable/plant based diet. This claim will proceed against Defendants Caldrin and Williams.

The Equal Protection Clause of the Fourteenth Amendment is essentially a direction that all similarly situated persons be treated equally under the law. *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). In order to state an equal protection claim, a plaintiff must allege facts demonstrating that defendants acted with the intent and purpose to discriminate against him based upon membership in a protected class, or that defendants purposefully treated him differently than similarly situated individuals without any rational basis for the disparate treatment. *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001); *see also Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

The Court finds that Plaintiff states a colorable equal protection claim. Based on the allegations, Plaintiff's religion requires a special diet that is similar to the Muslim and Jewish faiths. However, Caldrin and Williams refuse to accommodate Plaintiff's religious diet but will accommodate Muslim and Jewish inmate diets. This is sufficient to state a colorable claim on screening and will proceed against Defendant Caldrin and Williams.

The Court dismisses Laxalt and Sandoval, without prejudice, from this count because there are no allegations that they knew of or approved the denial of Plaintiff's religious diet accommodation. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (holding that "[a] supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them. There is no respondeat superior liability under [§]1983").

### ix. Count XVII

In Count XVII, Plaintiff sues Sandoval, Williams, Magapah, Dzurenda, Torress,

Aranas, Russell, Jane Doe #1, and John Doe #1-A for Eighth Amendment deliberate indifference to serious dental needs. (ECF No. 6-1 at 39). Plaintiff alleges the following: On January 16, 2016, Dr. Magapah, a dentist, removed one of Plaintiff's molars. (*Id.*) Plaintiff asked Magapah to fill the molar next to the extraction site and to treat Plaintiff's cavities but Magapah refused. (*Id.*) On January 21, 2017, the molar cavity became inflamed and a nerve became exposed causing Plaintiff extreme, sharp pain. (*Id.*) Plaintiff had difficulty eating, talking, and sleeping. (*Id.*) Plaintiff submitted kites to Torress on January 21, 2017, January 29, 2017, and February 6, 2017 and requested "pain packs" for the extreme pain. (*Id.*) Jane Doe #1, whose initials were "CB," processed the medical requests on February 7, 2017, February 8, 2017, and February 14, 2017. (*Id.*) Nobody provided Plaintiff any pain packs. (*Id.*) Plaintiff asked Torress twice, personally, for a pain back but Torress said, "no," and ignored Plaintiff. (*Id.*) Jane Doe #1 also refused to send Plaintiff a pain pack. (*Id.* at 40).

On March 27, 2017, Magapah saw Plaintiff and stated that the tooth could be saved if Plaintiff could pay for a root canal. (*Id.*) Plaintiff asked Magapah to save the tooth and to treat it and the tooth next to it but Magapah refused. (*Id.*) Magapah stated that he would only extract one tooth. (*Id.*) Plaintiff asked Magapah if the other teeth could be saved with fillings. (*Id.*) Magapah stated "yes" but stated that he would not treat them. (*Id.*) Plaintiff permitted Magapah to extract one of the molars and asked Magapah again to treat the other painful, molar. (*Id.*) Magapah responded, "No, I am not going to fill your teeth." (*Id.*) As of September 15, 2017, Plaintiff has 7 to 10 plainly visible cavities and one decaying molar. (*Id.*)

On March 30, 2017, Plaintiff filed a grievance. (*Id.*) On April 3, 2017, John Doe #1-A, a person named "Abuen", granted the grievance in full and stated that dental would put Plaintiff on the list to see the dental department. (*Id.*) As of September 15, 2017, Plaintiff remained in pain and had not been seen by dental. (*Id.*) Plaintiff filed another grievance but Russell rejected the fillings. (*Id.*)

Sandoval, Dzurenda, Williams, and Aranas were deliberately indifferent to

Plaintiff's serious dental needs by failing to create and enforce policies and failing to train and supervise staff to ensure adequate dental care.  (*Id.* at 40-41).

Prisoners can establish an Eighth Amendment violation with respect to dental care if they can prove that there has been a deliberate indifference to their serious dental needs.  *See Hunt v. Dental Dep't*, 865 F.2d 198, 200 (9th Cir. 1989); *see also* Count I, Part III.A.i. *supra*, for a discussion of the Eighth Amendment legal standard for deliberate indifference to serious medical needs.

The Court finds that Plaintiff states a colorable claim for deliberate indifference to serious dental needs.  Based on the allegations, Plaintiff has been in dental pain due to multiple cavities and inflammation in his mouth since January 2017.  Although the dental staff and dentist are aware of Plaintiff's pain and cavities, they do not appear to be treating Plaintiff's pain.  As such, this claim will proceed against Defendants Magapah, Torress, Russell, Jane Doe #1, and John Doe #1-A (when Plaintiff learns their identities).[5] However, this claim is dismissed, without prejudice, against Defendants Sandoval, Dzurenda, Williams, and Aranas because there are no allegations that they knew about Plaintiff's dental issues.  *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (holding that "[a] supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them. There is no respondeat superior liability under [§]1983").

**B.     State Law Claims**

**i.     Counts II, IV, and XVIII & Motion to Waive NRS § 41A.071 Requirement (ECF No. 7)**

In Counts II, IV, and XVIII, Plaintiff alleges state law claims for professional negligence against prison officials and prison doctors for their medical failings.  (ECF No. 6-1 at 15-16, 19-20, 42-44).  Pursuant to NRS § 41A.071(2), in order to file an action for

_____

[5] Although the use of "Doe" to identify a defendant is not favored, flexibility is allowed in some cases where the identity of the parties will not be known prior to filing a complaint but can subsequently be determined through discovery. *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980). If the true identity of any of the Doe Defendant(s) comes to light during discovery, Plaintiff may move to amend his complaint to assert claims against the Doe Defendant(s) at that time.

professional negligence, a plaintiff must submit an affidavit from a medical expert who practices or has practiced in that area and identifies the conduct that each health care provider is alleged to be negligent.  Plaintiff has not filed the required affidavit and has instead filed a motion to waive the affidavit requirement.  (ECF No. 7 at 1).  In the motion, Plaintiff argues that the affidavit requirement is unconstitutional because Plaintiff is indigent and does not have the money to pay for the affidavit.  (*Id.* at 4-5).  Moreover, Plaintiff argues that the affidavit requirement violates his right to access the courts.  (*Id.* at 4).

In *Bruins v. Osborn*, No. 2:15-cv-00324-APG-VCF, 2016 WL 8732299, (D. Nev. Feb. 5, 2016), this Court found that a complaint is defective, void, and cannot be amended under NRS § 41A.071 if a plaintiff does not file the required affidavit.  *Id.* at *5.  As such, the Court denies the motion to waive the affidavit requirement (ECF No. 7).  Additionally, the Court dismisses Counts II, IV, and XVIII, without prejudice but without leave to amend, because Plaintiff has failed to file the required affidavit.

The Court further notes that Plaintiff's denial-of-access-to-the-courts claim is misplaced.  The right of access to the courts is limited to non-frivolous direct criminal appeals, habeas corpus proceedings, and § 1983 actions.  *Lewis v. Casey*, 518 U.S. 343, 353 n.3, 354-55 (1996).  A professional negligence claim is a state law claim and, thus, does not implicate a constitutional right of access to the courts.

### ii.    Count VI

In Count VI, Plaintiff alleges a state law claim for negligence and/or gross negligence as a counterpart to his federal claim in Count V.  (ECF No. 6-1 at 23).  Plaintiff sues Laxalt, Sandoval, Russell, Byrne, Williams, and Dzurenda.  (*Id.*)

In Counts V and VIII, the Court found that Plaintiff stated a colorable conditions of confinement claim against Defendants Owens, Williams, Russell, and Byrne.  *See* Counts V and VIII, Part III.A.iii. *supra*.  Based on supplemental jurisdiction, the Court will permit this state law claim for negligence and/or gross negligence to proceed against Defendants Owens, Williams, Russell, and Byrne.  *See* 28 U.S.C. § 1367(a) (stating that "in any civil

action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy"). The Court dismisses Defendants Laxalt, Sandoval, and Dzurenda, without prejudice, from this count.

### iii.  Count VII

In Count VII, Plaintiff sues Laxalt, Sandoval, Dzurenda, Williams, Russell, and Byrne for a state law claim of intentional infliction of emotional distress ("IIED") based on restricting his access to outside recreation yard.  (ECF No. 6-1 at 24).  "The elements of a cause of action for intentional infliction of emotional distress are '(1) extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress, (2) the plaintiff's having suffered severe or extreme emotional distress and (3) actual or proximate causation.'"  *Dillard Dep't Stores, Inc. v. Beckwith*, 989 P.2d 882, 886 (Nev. 1999).

In Counts V and VIII, the Court permitted the claims for conditions of confinement violations based on outdoor exercise time to proceed against Owens, Williams, Russell, and Byrne.  *See* Counts V and VIII, Part III.A.iii. *supra*.  As such, the Court will permit this state law claim for IIED based on the same facts to proceed against Defendants Owens, Williams, Russell, and Byrne.  However, the Court dismisses Defendants Laxalt, Sandoval, and Dzurenda, without prejudice, from this count.

### iv.  Count X

In Count X, Plaintiff sues Laxalt, Sandoval, Dzurenda, and Cox for a state law claim of negligence based on failing to provide toilet access to Plaintiff.  (ECF No. 6-1 at 28). Count X appears to be related to the facts alleged in Count IX for violations of conditions of confinement to provide adequate sanitation.  (*See id.* at 27).  In Count IX, the Court dismissed the entire count with leave to amend.  *See* Count IX, Part III.A.iv. *supra*.  For the same reasons, the Court also dismisses this count, without prejudice, with leave to amend.

|     |                                                                                    |
|-----|------------------------------------------------------------------------------------|
| 1   | **v.   Count XIV**                                                                 |
| 2   | In Count XIV, Plaintiff sues Laxalt, Sandoval, Provencial, Owens, Plumlee,          |
| 3   | Russell, Vaughn, Ontiveras, Dzurenda, Cox, and Williams for a state law claim of IIED as |
| 4   | a state law counterpart to the allegations in Count XIII.  (ECF No. 6-1 at 34).     |
| 5   | In Count XIII, the Court dismissed the count, with prejudice, as amendment would    |
| 6   | be futile because Plaintiff cannot state an Eighth Amendment violation based on sexual |
| 7   | and verbal harassment.  *See* Count XIII, Part III.A.vii. *supra.*  The IIED claim must be |
| 8   | evaluated on its own merits.  Plaintiff alleges that Provencial "made sexually derisive |
| 9   | comments to" him, that Provencial stated "give me an excuse to blow someone's face  |
| 10  | off," and that Vaughn "was screaming, yelling profanity laced epithets at Plaintiff and other |
| 11  | offenders. . . ." (ECF No. 6-1 at 34).   These allegations are too vague to determine |
| 12  | whether they make out a claim of IIED.  Thus, the Court will dismiss Count XIV, without |
| 13  | prejudice, with leave to amend to give Plaintiff an opportunity to plead facts that would |
| 14  | specifically support an IIED claim if he can.                                       |
| 15  | **vi.   Count XVI**                                                                 |
| 16  | In Count XVI, Plaintiff sues Laxalt and Sandoval for violations of NRS § 266.430,   |
| 17  | NRS § 283.440, NRS § 253.175, NRS § 209.101, NRS § 209.111, and NRS § 209.116.      |
| 18  | (ECF No. 6-1 at 38).  Plaintiff fails to state a colorable claim in this count because he |
| 19  | cannot sue under these statutes.  First, NRS § 266.430 is a criminal statute.  Second, |
| 20  | NRS § 283.440 does not apply to the governor or the state attorney general pursuant to |
| 21  | NRS § 283.440(1)(b) and Nev. Const. Art. 7, § 2.  Finally, NRS § 253.175, NRS § 209.101, |
| 22  | NRS § 209.111, and NRS § 209.116 do not provide Plaintiff with private causes of action. |
| 23  | As such, the Court dismisses this count, with prejudice, as amendment would be futile. |
| 24  | **C.   Leave to Amend**                                                             |
| 25  | Plaintiff is granted leave to file a second amended complaint to cure the           |
| 26  | deficiencies of the first amended complaint.  If Plaintiff chooses to file a second amended |
| 27  | complaint he is advised that a second amended complaint supersedes (replaces) the   |
| 28  | original and amended complaints and, thus, the second amended complaint must be     |

complete in itself.  *See Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) (holding that "[t]he fact that a party was named in the original complaint is irrelevant; an amended pleading supersedes the original"); *see also Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (holding that for claims dismissed with prejudice, a plaintiff is not required to reallege such claims in a subsequent amended complaint to preserve them for appeal).  Plaintiff's second amended complaint must contain all claims, defendants, and factual allegations that Plaintiff wishes to pursue in this lawsuit.  Moreover, Plaintiff must file the second amended complaint on this Court's approved prisoner civil rights form and it must be entitled "Second Amended Complaint."

The Court notes that if Plaintiff chooses to file a second amended complaint curing the deficiencies, as outlined in this order, Plaintiff shall file the second amended complaint within 30 days from the date of entry of this order.  If Plaintiff chooses not to file a second amended complaint curing the stated deficiencies, this action shall proceed only on Counts V and VIII (conditions of confinement violations) against Owens, Williams, Russell, and Byrne; Count VI (state law claim) against Owens, Williams, Russell, and Byrne; Count VII (state law claim) against Defendants Owens, Williams, Russell, and Byrne; Count XV (free exercise, RLUIPA, and equal protection violations) against Caldrin and Williams; and Count XVII (deliberate indifference to serious dental needs) against Magapah, Torress, Russell, Jane Doe #1, and John Doe #1-A (when Plaintiff learns their identities).

## III.  MOTION FOR PRELIMINARY INJUNCTION

Plaintiff filed a motion for preliminary injunction based on the facts in Count XVII of the amended complaint alleging Eighth Amendment deliberate indifference to serious dental needs.  (*See* ECF No. 8 at 4-5, 7-8).  The motion alleges the following:  As of November 1, 2017, Plaintiff has not been seen by the dental department even though 209 days have passed since a prison official upheld/granted his grievance for dental assistance.  (*Id.* at 5).  Plaintiff has 7 to 10 visible cavities.  (*Id.*)  Three of those cavities cause chronic pain due to exposed nerves and regular, foul-tasting discharge.   (*Id.*)

1  Plaintiff wakes up due to severe pain. (*Id.*)  Due to the "extreme" pain, Plaintiff has

2  difficulty eating, sleeping, and drinking. (*Id.* at 7).  Plaintiff's pain level is constantly in the

3  5 to 7 range but reaches 10 at times. (*Id.*)  Plaintiff seeks a full oral exam and dental

4  treatment. (*Id.* at 10-11).

5      Injunctive relief, whether temporary or permanent, is an "extraordinary remedy,

6  never awarded as of right."  *Winter v. Natural Res. Defense Council*, 555 U.S. 7, 24

7  (2008).  "A plaintiff seeking a preliminary injunction must establish that he is likely to

8  succeed on the merits, that he is likely to suffer irreparable harm in the absence of

9  preliminary relief, that the balance of equities tips in his favor, and that an injunction is in

10  the public interest."  *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046,

11  1052 (9th Cir. 2009) (quoting *Winter*, 555 U.S. at 20).  Furthermore, under the Prison

12  Litigation Reform Act ("PLRA"), preliminary injunctive relief must be "narrowly drawn,"

13  must "extend no further than necessary to correct the harm," and must be "the least

14  intrusive means necessary to correct the harm."  18 U.S.C. § 3626(a)(2).

15      The Court finds that, based on the facts alleged in the present motion and the

16  amended complaint, Plaintiff arguably states a colorable claim for Eighth Amendment

17  deliberate indifference to serious dental needs.  Furthermore, the Court finds that based

18  on the nature of Plaintiff's allegations, Plaintiff could likely suffer irreparable harm through

19  the loss of his teeth and the inability to eat due to the pain.  As such, the Court orders the

20  Attorney General's Office to advise the Court within 7 days from the date of the entry of

21  this order whether it will enter a limited notice of appearance on behalf of Defendants.

22  Additionally, based on the nature of the allegations, Defendants shall also have 7 days

23  from the date of this order to file their response to Plaintiff's motion for preliminary

24  injunction.

25  **IV.    CONCLUSION**[6]

26      For the foregoing reasons, it is ordered that a decision on the application to

27

28      _____

      [6] Based on the allegations in the amended complaint, the Court interprets Perry
Russell as a defendant in this case.

- 22 -

proceed *in forma pauperis* (ECF No. 6) is deferred.

It is further ordered that the motion to add pages to form complaint (ECF No. 2) is granted.

It is further ordered that the motion to waive NRS § 41A.071 (ECF No. 7) is denied.

It is further ordered that the Clerk of the Court shall file the first amended complaint (ECF No. 6-1).

It is further ordered that Count I, alleging deliberate indifference to serious medical needs, is dismissed, without prejudice, with leave to amend.

It is further ordered that Counts II, IV, and XVIII, alleging state law claims for professional negligence, are dismissed, without prejudice, but without leave to amend.

It is further ordered that Count III, alleging deliberate indifference to serious medical needs, is dismissed, without prejudice, with leave to amend.

It is further ordered that Counts V and VIII, alleging conditions of confinement violations, will proceed against Defendants Owens, Williams, Russell, and Byrne. Defendants Laxalt, Sandoval, and Dzurenda are dismissed, without prejudice, from these counts.

It is further ordered that Count VI, alleging a state law claim, will proceed against Defendants Owens, Williams, Russell, and Byrne. Defendants Laxalt, Sandoval, and Dzurenda are dismissed without prejudice from this count.

It is further ordered that Count VII, alleging a state law claim, will proceed against Defendants Owens, Williams, Russell, and Byrne. Defendants Laxalt, Sandoval, and Dzurenda are dismissed without prejudice from this count.

It is further ordered that Count IX, alleging conditions of confinement violations, is dismissed, without prejudice, with leave to amend.

It is further ordered that Count X, alleging a state law claim, is dismissed, without prejudice, with leave to amend.

It is further ordered that Count XI, alleging conspiracy, is denied, with prejudice, as amendment would be futile.

It is further ordered that Count XII, alleging conditions of confinement violations, is dismissed, without prejudice, with leave to amend. It is further ordered that Count XIII, alleging verbal harassment, is dismissed, with prejudice, as amendment would be futile.

It is further ordered that Count XIV, alleging a state law claim, is dismissed, without prejudice, with leave to amend.

It is further ordered that the portion of Count XV, alleging free exercise, RLUIPA, and equal protection violations, will proceed against Defendants Caldrin and Williams. The portion of Count XV, alleging conspiracy, is dismissed, without prejudice, with leave to amend. Defendants Laxalt and Sandoval are dismissed, without prejudice, from this count.

It is further ordered that Count XVI, alleging state statutory violations, is dismissed, with prejudice, as amendment would be futile.

It is further ordered that Count XVII, alleging Eighth Amendment deliberate indifference to serious dental needs, will proceed against Defendants Magapah, Torress, Russell, Jane Doe #1, and John Doe #1-A (when Plaintiff learns their identities). Defendants Sandoval, Williams, Dzurenda, and Aranas are dismissed, without prejudice, from this count.

It is further ordered that Defendants Laxalt, Sandoval, Vaughn, Dr. Leaks, Neven, Cox, Dzurenda, KT Industries, Plumlee, Provencial, Aranas, and Ontiveras, are dismissed from this case, without prejudice, with leave to amend.

It is further ordered that Defendant State of Nevada ex rel NDOC is dismissed, with prejudice, from the entirety of the case, without leave to amend, as amendment would be futile.

It is further ordered that, if Plaintiff chooses to file a second amended complaint curing the deficiencies of his first amended complaint, as outlined in this order, Plaintiff shall file the second amended complaint within 30 days from the date of entry of this order.

It is further ordered that the Clerk of the Court shall send to Plaintiff the approved

form for filing a § 1983 complaint, instructions for the same, and a copy of his first amended complaint (ECF No. 6-1). If Plaintiff chooses to file a second amended complaint, he must use the approved form and he shall write the words "Second Amended" above the words "Civil Rights Complaint" in the caption.

It is further ordered that, if Plaintiff chooses to file a second amended complaint, the Court will screen the second amended complaint in a separate screening order. The screening process will take several months.

It is further ordered that, if Plaintiff chooses not to file a second amended complaint curing the stated deficiencies of the first amended complaint, this action shall only proceed immediately on Counts V and VIII (conditions of confinement violations) against Owens, Williams, Russell, and Byrne; Count VI (state law claim) against Owens, Williams, Russell, and Byrne; Count VII (state law claim) against Defendants Owens, Williams, Russell, and Byrne; Count XV (free exercise, RLUIPA, and equal protection violations) against Caldrin and Williams; and Count XVII (deliberate indifference to serious dental needs) against Magapah, Torress, Russell, Jane Doe #1, and John Doe #1-A (when Plaintiff learns their identities).

It is further ordered that a decision on the motion for preliminary injunction (ECF No. 8) is deferred.

It is further ordered that the Attorney General's Office shall advise the Court within 7 days from the date of entry of this order whether it can accept service of process for the named Defendants and enter a limited appearance. In its notice, the Attorney General's Office shall advise the Court and Plaintiff of: (a) the names of the Defendants for whom it accepts service; (b) the names of the Defendants for whom it does not accept service, and (c) the names of the Defendants for whom it is filing last-known-address information under seal. As to any of the named Defendants for whom the Attorney General's Office cannot accept service, the Office shall file, under seal, but shall not serve the inmate Plaintiff the last known address(es) of those Defendant(s) for whom it has such information. If the last known address of the Defendant(s) is a post office box, the

1    Attorney General's Office shall attempt to obtain and provide the last known physical
2    address(es).
3         It is further ordered that Defendants shall file a response to Plaintiff's motion for
4    preliminary injunction (ECF No. 8) within 7 days of the date of entry of this order. If Plaintiff
5    chooses to file a reply, he shall do so within 10 days after Defendants file a response.
6         It is further ordered that the Clerk of the Court shall electronically serve a copy of
7    this order, a copy of Plaintiff's first amended complaint (ECF No. 6-1), and a copy of
8    Plaintiff's motion for preliminary injunction (ECF No. 8) on the Office of the Attorney
9    General of the State of Nevada, by adding the Attorney General of the State of Nevada
10   to the docket sheet.  This does not indicate acceptance of service.
11        DATED THIS  4th day of December 2017.

                                                    _____
13                                                  UNITED STATES DISTRICT JUDGE