1
2
3
4
5
6

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

7
8
9
10
11

JESSE ARON ROSS,

                                    Plaintiff,

        v.

BRIAN SANDOVAL, et al.,

                                    Defendants.

Case No. 2:17-cv-02386-APG-GWF

**FINDINGS AND RECOMMENDATION**

**Re: Motion for Preliminary
Injunction (ECF No. 8)**

12    This matter is before the Court on Plaintiff Jesse Aron Ross's Motion for Preliminary

13  Injunction (ECF No. 8), filed on November 6, 2017.  Defendants filed their Opposition (ECF No.

14  12) on December 11, 2017, and Plaintiff filed his Reply (ECF No. 17) on December 20, 2017.

15  This matter was referred to the undersigned Magistrate Judge to conduct a hearing and issue

16  findings and recommendations.  The Court conducted an evidentiary hearing in this matter on

17  January 31, 2018.

18                                   **BACKGROUND**

19    Plaintiff Jesse Aron Ross is an inmate at the Nevada High Desert State Prison ("HDSP").

20  Plaintiff's Second Amended Complaint (ECF No. 19) alleges that Defendants have violated his

21  constitutional and statutory rights, including providing him with deficient medical, dental, and

22  optometry care, deficient outdoor exercise, violating his rights under RLUIPA and his First

23  Amendment right to the free exercise of religion, and providing inadequate access to sanitation.

24  *Id.* at 10.  Plaintiff's instant motion for preliminary injunction requests an order directing

25  Defendants to provide him with necessary dental treatment.

26    Plaintiff states that on January 21, 2017, January 29, 2017 and February 6, 2017, he

27  submitted "kites," i.e., written requests, to see the dentist.  Plaintiff's January 21st medical kite

28  stated:  "I have an extremely painful tooth ache/cavity.  Very very sharp pain -- Please pull

tooth." *Defendants' Hearing Exhibit 1.* His second kite, actually dated January 31, 2017, stated: "I have a decaying teeth, molar, in extreme pain. Tried to get Asian dentist to fill this cavity a year ago but he wouldn't. Now I need extraction. Please pull tooth and provide IBU in interim." *Defendants' Hearing Exhibit 2.* In his third kite on February 6, 2017, Plaintiff stated: "I have a decaying molar tooth. I am in pain, request extraction and IBU/tylenol in the interim." *Defendants' Hearing Exhibit 3.* Although not mentioned in his motion, Plaintiff submitted a fourth kite on February 9, 2017, in which he stated: "I have two teeth causing extreme pain. Please fill, root canal or extract. Please provide pain medz in the interim." *Defendants' Hearing Exhibit 4.*

Plaintiff was seen by Dr. Mangapit on March 27, 2017. According to Plaintiff's First Amended Complaint (ECF No. 10), at 40, Dr. Mangapit stated that his tooth could be saved if he could pay for a root canal. Plaintiff asked Dr. Mangapit to treat the tooth and save it, and treat the tooth next to it which was also painful. Dr. Mangapit refused, stating that he would only extract one tooth. Plaintiff asked if his other teeth could be saved by fillings. Dr. Mangapit said yes, but that he would not treat them. Plaintiff allowed Dr. Mangapit to extract one molar and again asked him to treat the other tooth which the doctor refused. According to Plaintiff, he had 7 to 10 plainly visible cavities and still had one molar that was decaying and causing him sharp pain.

Plaintiff's NDOC Dental Chart was admitted as *Defendants' Hearing Exhibit 3.* Dr. Mangapit's March 27, 2017 handwritten note is difficult to read. According to Defendants, the note states: "M dx [medical diagnosis] no change, 'My tooth hurts' - #3, has caries [decay and crumbling of a tooth] to pulp and root --- non salvageable --- no complications --- home care inst [instruction] given, Rx [prescription] Ibuprof [Ibuprofen] 200 pack given --- 1 PA [posterior anterior x ray) taken." *Defendants' Opposition* (ECF No. 12), at 3. The bracketed entries are Defendants' counsel's interpretation of the note. *Id.* at 3, n. 1. Plaintiff testified that after pulling one tooth, Dr. Mangapit prescribed him 200 milligrams of Ibuprofen for pain relief.

Plaintiff filed an administrative grievance on March 30, 2017 regarding Dr. Mangapit's refusal to treat his other teeth. On May 31, 2017, Plaintiff's grievance was upheld. The *Inmate*

2

*Grievance Report* issued to Plaintiff stated:  "Please be advised that the dental department was notified about your dental issue.  We will place you on the list to be seen by the dental department regarding your dental problem.  Please wait until you get seen on your unit day. Thanks."  *Plaintiff's Motion for Preliminary Injunction* (ECF No. 8), *Exhibit A*.  Plaintiff testified that he expected to be notified of his dental appointment date.  After five months passed without an appointment being scheduled, however, he filed the instant motion for preliminary injunction.  *Motion* (ECF No. 8), at 5.

Defendants attached to their opposition an *Inmate Grievance Report*, dated November 15, 2017, that was in response to an informal grievance that Plaintiff filed on or about October 9, 2017.  This report stated:  "I am in receipt of your grievance 2006-30-57050 as it relates to your dental issues.  You were referred to be seen by dental department.  You received a pain medication on October 6, 2017 that you signed for.  AR 613 states 'The health care complaints of inmates will be processed, reviewed, and responded to daily by trained medical personnel according to priority of the need.'  Please wait patiently."  *Defendants' Opposition* (ECF No. 12), *Exhibit 7*.

Apparently in response to Plaintiff's motion for preliminary injunction, an appointment was made for him to see a dentist, Dr. Sanders, on December 11, 2017.  Dr. Sanders' note states:

> At the request of DON, pt. is being seen and treated for pain in tooth #4. Patient has not submitted a patient kite to dental and has been informed to submit dental kites (request for tx) from this point forward.  Oral exam done, med [chart?] reviewed.  1 PH taken #4 caries & calculus #4D removed calculus and caries.  [The Court cannot read the next portion of note.]  pt says he will kite and told me that this was "the most pleasant dental experience he has had."  Pt also mentioned that he had previously had a fractured mandible.

*Defendants' Hearing Exhibit 5*

Plaintiff testified that he was satisfied with the dental treatment he received from Dr. Sanders on December 11, 2017, although it did not resolve all of his serious dental problems.  He testified that Dr. Sanders conducted a full oral examination on that date and read her findings to a dental assistant who apparently wrote them down.  Dr. Sanders told Plaintiff to pick one tooth for

treatment.  Plaintiff picked the most painful tooth, which was Number 4, next to the site where Dr. Mangapit had previously removed a tooth in March 2017.  Dr. Sanders x-rayed that tooth and provided a temporary filling.

After Plaintiff filed his reply brief in support of his motion on December 20, 2017, Defendants' counsel sent him a letter on January 4, 2018 which stated as follows:

> On December 20, you filed a Reply alleging that the NDOC has not met your dental needs and that you have two cavities and a bacterial infection that require urgent treatment.  However, I am informed by HDSP dental staff that as of the date of this letter, they have not received any new treatment requests from you.
>
> To ensure that there is no confusion I wish to reiterate that it is your responsibility to submit a dental treatment request each time you require treatment, and that HDSP staff generally will not schedule an appointment until such a request is received.  This system is intended to make certain that requests are properly tracked and that appointments are scheduled in a manner that is fair to all inmates who are awaiting treatment.  Therefore, assuming you are still seeking additional treatment, please be sure to submit the appropriate dental treatment request form so that you will not experience any unnecessary delay.
>
> *Defendants' Hearing Exhibit 6.*

Plaintiff submitted a dental kite on January 5, 2018 which stated: "I have 2 painful cavities, multiple other cavities, substantial calculus build up, multiple missing molars.  I respectfully request a treatment plan be established.  A full mouth x-ray be conducted, all cavities be treated, partials be installed and calculus be removed/treated."  *Defendants' Hearing Exhibit 7.*  On January 8, 2018, Plaintiff submitted a follow-up kite which requested the same dental care as his January 5th kite, and also requested "silver nitrate fluoride varnish to eliminate bacteria."  *Defendants' Hearing Exhibit 8.*

Plaintiff testified at the January 31, 2018 hearing that he has had six to seven dental appointments during the five years he has been at High Desert State Prison.  He stated that two teeth are presently causing him substantial pain.  These are the top left molar and the tooth nearest that molar.  (There is a missing tooth between these two).  He was not sure which tooth was causing the most pain, but he described the pain as a "5" or "6" on a scale of 1-10.  Plaintiff

4

testified that he can hardly chew on that side of his mouth due to the pain.  He also has problems chewing on the other side due to the loss of teeth.  He has calculus, which is a progressive build-up of plaque that over time causes tooth decay and gum/periodontal disease.  He described the pain due to the calculus as more of a chronic pain which he has had for about two years.  Plaintiff has several other cavities on his upper lateral incisors and two molars which are not presently causing a lot of pain.  He believes that Dr. Mangapit left bone fragments in the root socket after he pulled the tooth in March 2017.  Plaintiff testified that the 600 milligram Ibuprofen pain medication he has received has not been effective in relieving his dental pain.  He has also purchased nonprescription oral gel medication which he applies to his teeth.  This medication is not effective.  He testified that some of his written requests (kites) for medication were ignored.  He indicated that pain medication, in any event, is ineffective.

Plaintiff testified that he is aware that High Desert State Prison has an emergency process, whereby an inmate can declare himself "man-down" in order to elicit an emergency response from the medical staff.  Although he experiences substantial dental pain, Plaintiff does not believe it qualifies as an emergency medical condition that would justify using the "man-down" procedure.  Plaintiff is also not sure if the "man-down" is a written procedure.

Plaintiff testified that Dr. Sanders told him on December 11, 2017 not to submit a kite for a follow-up dental appointment until after the New Year because Plaintiff's dental appointment day, per his housing unit, was on Monday, and the upcoming Christmas and New Year's holidays were on Mondays.  Plaintiff therefore waited until January 5 and 8, 2018 to submit two kites requesting additional dental treatment.  He was advised that a dental appointment would be scheduled, but as of the hearing date an appointment had not been set.

Dr. Paul Bitar, the senior institutional dentist at HDSP, testified that the procedure for obtaining dental appointments requires inmates to submit a kite.  Once the kite is received, the dental department informs the inmate that his appointment will be scheduled "in the near future."  Inmates are not notified of the actual appointment until the day it is scheduled.  Because there are approximately 4,000 inmates, the dental department has to prioritize treatment.  The dental department treats a "quadrant" at a time.  The four quadrants are the lower left, lower right,

upper left or upper right of the jaw.   The patient-inmate is responsible for informing the dentist

which tooth or quadrant is causing him the most problems and which area he desires to have

treated.  Dr. Bitar testified that if a patient has four or five broken teeth in one quadrant, the

dentists can extract or otherwise treat those teeth during a single session.  If, however, the patient

has problems in more than one quadrant, then the dentist will treat the most severe or serious

problem in one quadrant and defer treatment in other quadrants to subsequent appointments.  If

further treatment is needed or requested, then the inmate is required to submit another kite within

a day or two after his appointment.

Dr. Bitar believes that most of the HDSP inmates have some degree of dental problems,

and inmates frequently present with multiple dental issues.  The primary reasons for inmate

dental problems are long term dental neglect and habitual drug use.  Dr. Bitar testified that at any

given time, there are 500 to 700 dental kites pending.  There are 12 residential units at HDSP,

and each residential unit is assigned a particular day of the week for dental appointments.

Plaintiff's unit has appointments on Mondays.  Dr. Bitar testified that he sees an average of 15

inmate dental patients a day.[1]  He estimated that there is a four to six week waiting period from

when a kite is submitted to when the appointment is set.

Dr. Bitar testified that HDSP is supposed to have three dentists on staff.  Dr. Mangapit

left in August 2017 and his vacancy had not been filled as of January 31, 2018.  The department

has three dental assistants and two lab technicians.  The dental department does not employ

dental hygienists, and therefore, does not provide dental cleaning or scaling.  Inmates are given

instructions regarding routine dental care such as brushing and flossing.  Dr. Bitar testified that if

the prison was fully staffed with three dentists, it would be able to adequately treat the inmate

population based on the quadrant care procedure he described.  It is not possible, however, to

provide treatment based on a comprehensive treatment plan for each patient as is done in civilian

dental practices.

---

[1] Assistant Warden Jennifer Nash testified that the dentists work a 10-hour day, 4-day work week.  Accounting for lunch and other breaks, the average length of a dental appointment would be approximately 35 minutes.

Dr. Bitar defined a "dental emergency" as anything that would create serious medical distress in a body system.  He stated, for example, that a dental abscess that impinges on the airway and obstructs breathing qualifies as an emergency.  Pain, alone, does not constitute a dental emergency.  Dr. Bitar believes that most of the inmates on the waiting list for appointments have some degree of pain or discomfort.  He testified that nurses will make note of inmate dental complaints while doing their rounds of the residential units, and will advise the inmates to submit kites for dental appointments.  The nurses may also provide pain medication or, if medically necessary, prescribe antibiotics.

Dr. Bitar testified that Plaintiff's dental chart showed that during each appointment from 2013 to March 27, 2017, a tooth was determined to be decayed and unrestorable, and was extracted. During the appointment on December 11, 2017, Plaintiff received a permanent filling in a tooth on the upper right.  He stated that Plaintiff was incorrect in stating that this was a temporary filling because the department does not provide temporary fillings.   Dr. Bitar testified that there would have been no reason for Dr. Sanders to advise Plaintiff on December 11, 2017 to delay submitting a kite for a follow-up dental appointment.

Associate Warden Jennifer Nash testified that she is the grievance coordinator for general population and segregation housing.  She stated that as of January 31, 2018, there were 3,560 inmates in HDSP.  HDSP is the largest prison in Nevada.  Ms. Nash generally described the different departments and services provided to inmates at HDSP, including educational, legal and medical.  HDSP is dependent on and subject to the budget authorized by the Nevada Legislature.  Ms. Nash testified that approximately 80 to 100 new inmates are received at HDSP each week.  Inmates are housed in different sections of the prison based on the threat or safety risk they pose.  The security requirements affect the scheduling of inmate dental appointments.  Inmates are scheduled for dental appointments based on their housing unit.  As a general rule, inmates cannot be scheduled for dental appointments on days other than the day assigned to their housing unit.

In emergency situations, the dental staff can request that an inmate be brought in for treatment on a day other than the day scheduled for his housing unit. Ms. Nash testified that the infirmary (which includes the dental department) holding cell can only hold 10 inmates. If an inmate was brought in for dental treatment on a day other than his assigned unit day, the infirmary would have to be "locked-down" for safety and security reasons.

Assistant Warden Nash also describe the "man-down" procedure that Plaintiff referenced in his testimony. She stated that if an inmate requires immediate medical attention he can alert custody staff who can initiate a "man-down" situation which will result in medical responding to deal with the emergency. An inmate could be subject to administrative discipline if he unreasonably or improperly invoked the "man-down" procedure. Assistant Warden Nash was unable to state whether a complaint of extreme dental pain would justify invoking the "man-down" procedure. She testified, however, that an inmate with an obvious abscessed tooth could reasonably invoke the "man-down" procedure.

At Plaintiff's request, Dr. Romeo Aranas, the Medical Director of HDSP, appeared by telephone at the hearing. Dr. Aranas testified that the Director of Nursing (DON) handles medical grievances, including dental care grievances, at the first level, and can direct the dental department to schedule an appointment for an inmate if his grievance is upheld. Plaintiff questioned Dr. Aranas about another civil action regarding deficient dental care, *Sanzo v. Cox* (discussed hereinafter). Although Dr. Aranas was not familiar with the case name, he was familiar with the allegations of the case. Dr. Aranas stated that a Medical Directive for Dental Services has been issued pursuant to the requirements of NDOC Administrative Regulation 631, and has been distributed to the dentists in the HDSP dental department. Dr. Bitar testified, however, that he was unaware of the existence of a medical directive required by Administrative Regulation 631. Dr. Aranas also testified that the dental department at HDSP is authorized to have 2 ½ dentists, i.e., two full time and one-part time dentist. He stated that Dr. Sanders only recently became a full time dentist. At the time of the hearing, the prison was still in process of recruiting a part-time (two days a week) dentist. Dr. Aranas could not state whether the approved dental staffing level at HDSP is adequate to treat the inmate population at that facility.

A copy of NDOC Administrative Regulation ("AR") 631, Dental Services, was admitted at the hearing.  *Defendants' Hearing Exhibit 9.*  This regulation provides that dental care should be provided to inmates under the direction and supervision of a licensed dentist.  The prison medical director supervises and evaluates the clinical work of the institutional Dentist.  The regulation also provides for the hiring of dental assistants and dental prosthetic technicians.  *Id.* at 1-2.   The regulation states that "[d]ental service should be timely, and include arrangements for handling urgent and emergent conditions.  All emergency grievances related to dental should be reviewed by the institutional Dentist or the on-call physician if it is received outside normal hours."  *Id.* at 2.  Appropriate diagnostic equipment should be available in all dental facilities.  *Id.*  The regulation states that newly incarcerated inmates should receive a dental examination within 14 days of intake for dental evaluation and classification.  New inmates will receive immediate treatment on an emergency basis; or will be provided appointments using a priority system established by the institutional Dentist.  *Id.* at 2-3.

The regulation states that the following dental services should not be provided:  (A) Vacuum fired porcelain with or without any precious or non-precious metals for any restorative work; (B) Root canals on posterior teeth except when they are an integral part of a bridge or partial support or a crown that is already present or at the discretion of the institutional Dentist, when medically necessary; (C) Cosmetic dentistry; (D) Orthodontic work; (E) Orthodontics may be removed by an institutional Dentist with the inmate's signed authorization; and (F) Casting for partial framework.  *Id.* at 3.  The regulation also authorizes outside consultations if warranted by dental status and approved by the Utilization Review Panel.  *Id.*

The regulation also requires a Medical Directive for Dental Services applicable to each institution.  *Id.* at 4.  Following the hearing, the Defendants supplemented their exhibits by filing a copy of Medical Directive 408 which was signed by Romeo Aranas, M.D., Medical Director, and is dated February 28, 2017.  *Defendants' Supplemental Exhibits* (ECF No. 29), *Exhibit 11.* This document states that dental services will be scheduled by the Director of Nursing Services ("DON") in conjunction with the institutional Dentist.  *Id.*  at 1.  This document also states that root canal procedures on anterior teeth will not be performed when the Dentist determines

extraction of the tooth is appropriate due to non-restorability, periodontal involvement or when the tooth can be replaced by an addition to an existing or proposed prosthesis. Preventive services such a prophylaxis, gross debridement and scaling/root planing will be considered after evaluation by the Dentist. Excluded Dental Services include, but are not limited to, dental implants, orthodontics, routine extraction of asymptomatic third molars, partial dentures to replace one or more missing anterior teeth, anterior crowns and cosmetic dentistry. *Id.* at 2.

Plaintiff requests that the Court order the Director of the Nevada Department of Corrections to (1) provide Plaintiff will a full dental oral examination; (2) upon completion of the examination, treat all cavities forthwith by providing fillings, root canals, or caps for the teeth that can be saved; (3) extract the teeth that cannot be saved and provide Plaintiff with "partials;" (4) that treatment be provided within 14 days of the issuance of the preliminary injunction; and (5) that the Court order the United States Marshal to serve the Director of the Nevada Department of Corrections with the preliminary injunction order. Defendants argue that injunctive relief is not warranted because Plaintiff received adequate dental treatment at his most recent visit on December 11, 2017, and he can and will receive follow-up dental care by submitting kites for dental appointments and being seen in regular course pursuant to those procedures.

## DISCUSSION

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Resources Defense Council*, 555 U.S. 7, 20, 129 S.Ct. 365, 374 (2008). An injunction cannot be issued merely because it is possible that there will be an irreparable injury to the plaintiff; it must be likely that there will be. *American Trucking Ass'ns v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009). A preliminary injunction based only on a possibility of irreparable injury is inconsistent with the characterization of injunctive relief as an extraordinary

remedy that may only be awarded on a clear showing that the plaintiff is entitled to the such relief. *Id.*

An even more stringent standard is applied where mandatory, as opposed to prohibitory, relief is sought. Where a mandatory preliminary injunction is sought that goes well beyond maintaining the status quo *pendente lite*, the court should be extremely cautious. *Blue v. Skolnik*, 2012 WL 4472138, at *4 (D.Nev. Jul. 31, 2012) (citing *Martin v. International Olympic Committee*, 740 F.2d 670, 675 (9th Cir. 1984)). "An award of mandatory preliminary relief is not to be granted unless both the facts and the law clearly favor the moving party and extreme or very serious damage will result." *Id.* (citing *Anderson v. United States*, 612 F.2d 1112, 1115 (9th Cir. 1979)).

In addition to the legal standards generally applicable to the granting of injunctive relief, the Prison Litigation Reform Act ("PLRA"), 18 U.S.C. § 3626(a)(2), states as follows:

> Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct the harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the principles of comity set out in paragraph (1)(B) in tailoring any preliminary relief.

A preliminary injunction automatically expires 90 days after its entry unless the court makes the findings required for prospective relief and makes the order final before the expiration of the 90-day period. *Id.*

"A prisoner can establish an Eighth Amendment violation arising from deficient medical care if he can prove that prison officials were deliberately indifferent to a serious medical need." *Steiner v. Hammond*, 2013 WL 3456930, at *10 (W.D.Wash. Jul. 9, 2013) (citing *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976)). A medical need is serious if failure to treat it will result in significant injury or the unnecessary and wanton infliction of pain. *Peralta v. Dillard*, 744 F.3d 1076, 1081 (9th Cir. 2014) (en banc). "Examples of conditions that are 'serious' in nature include 'an injury that a reasonable doctor or patient would

11

find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.'" *Sanzo v. Cox*, 2015 WL 9598270, at *3 (D.Nev. Dec. 10, 2015), *report and recommendation adopted* 2016 WL 54206 (D.Nev. Jan. 5, 2016) (citing *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992)).

"Deliberate indifference entails something more than medical malpractice or even gross negligence.  Inadvertence, by itself, is insufficient to establish a cause of action under section 1983.  Instead, deliberate indifference is only present when a prison official 'knows of and disregards an excess risk to inmate health or safety.  The official must both be aware of the facts from which the inference could be drawn that a substantial risk of harm exists and he must also draw the inference." *Sanzo*, 2015 WL 9598270, at *3 (citing *McGuckin* and *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).  "Indifference 'may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care.'" *Antonetti v. Neven*, 2011 WL 4527413, at *2 (D.Nev. Sept. 28, 2011) (citing *McGuckin*, 974 F.2d at 1060).

Prison authorities have wide discretion in the medical treatment afforded prisoners. *Steiner v. Hammond*, 2013 WL 3456930, at *10 (citing *Stiltner v. Rhay*, 371 F.2d 420, 421 (9th Cir. 1971)).  The plaintiff must show more than a difference of medical opinion as to the need for one course of treatment over another.  *Id.* (citing *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)).  Instead, the plaintiff must show that the course of treatment the defendants chose to provide was unacceptable under the circumstances and that they chose this course in conscious disregard of an excessive risk to plaintiff's health.  *Id.*

In *Ramos v. Lamm*, 639 F.2d 559, 576 (10th Cir. 1980), *cert. denied*, 450 U.S. 1041, 101 S.Ct. 1759, 68 L.Ed.2d 239 (1981), the court stated that "[p]risoners generally have more extensive dental problems that the average citizen.  Consequently, dental care is one of the most important medical needs of inmates."  The Ninth Circuit in *Peralta v. Dillard*, 744 F.3d at 1082, noted that a prison is a particularly difficult place to provide dental care.  "Security concerns dictate that only one prisoner be in the examining room at a time, even if there's more than one

chair, and that no prisoner be left alone, lest he try to use dental tools as weapons. Further exacerbating the problem, only emergency cases can be seen when the prison is in lockdown and dentists can't accept prisoners' complaints at face value, as inmates often try to jump the line by exaggerating their symptoms." *Id.* Assistant Warden Nash's testimony at the hearing in this case provides some additional information regarding the security concerns that affect the provision of dental services at HDSP.

Nevertheless, the Eighth Amendment requires that prisoners be provided with a system of ready access to adequate dental care. *Hunt v. Dental Dept.*, 865 F.2d 198, 200 (9th Cir. 1989). In deciding whether there has been deliberate indifference to an inmate's serious medical needs, the court need not defer to the judgment of prison doctors or administrators. *Id.* (citing *Wood v. Sunn*, 852 F.2d 1205, 1211 (9th Cir. 1988). Delay in providing a prisoner with dental treatment, standing alone, however, does not constitute an Eighth Amendment violation. *Id.* at 200.

In *Hunt*, the plaintiff alleged that prison officials were aware that the loss of his dentures was causing him severe pain, and was resulting in permanent damage to his teeth. The prison officials were also allegedly aware of plaintiff's bleeding gums, breaking teeth, and inability to eat properly, but failed to take any action to relieve his pain or prescribe a soft food diet until new dentures could be fitted. The court held that these allegations were sufficient to state a claim for deliberate medical indifference under 42 U.S.C. §1983 and the Eighth Amendment. The court cited *Fields v. Gander*, 734 F.2d 1313, 1315 (8th Cir. 1984), which held that a plaintiff sufficiently alleged a claim for deliberate medical indifference where the jailer knew of his infected tooth and severe pain, but refused to provide dental care for up to three weeks. *Id.*

"The mere failure to provide routine teeth cleaning does not create a serious medical need." *Peralta*, 744 F.3d at 186 (citing *Hallett v. Morgan*, 296 F.3d 732, 745-46 (9th Cir. 2002)). "The Eighth Amendment 'requires neither that prisons be comfortable nor that they provide every amenity that one might find desirable.'" *Id.* (citing *Hallett*, 296 F.3d at 745, in turn quoting *Hoptowit v. Ray*, 682 F.2d 1237, 1246 (9th Cir. 1982)). The court noted, however, that plaintiff "alleg[ed] that he had severe pain, infected teeth, cavities, and bleeding gums, and that a cleaning was necessary to treat those medical conditions. We've held that the 'existence of

1  chronic and substantial pain' indicates that a prisoner's medical needs are serious, *McGuckin*,

2  974 F.2d at 1060, and recognized that delay as short as three months in receiving necessary

3  dental care can create a genuine issue of material fact." *Id.* (citing *Hunt*, 865 F.2d at 200-01).

4       In *Aytch v. Sablica*, 498 Fed.Appx. 703, 2012 WL 5857342 (9th Cir. Nov. 19, 2012)

5  (unpublished decision), the court held that plaintiff produced sufficient evidence to defeat

6  summary judgment based on his allegation that prison officials disregarded five medical kites he

7  submitted in which he complained of severe tooth pain, and also denied his informal grievance

8  requests for dental treatment.  The prison nurse was allegedly aware of plaintiff's medical

9  concerns, but denied his grievance and advised him that he was on the waiting list to see the

10  dentist.  *Id.* at 704.  The court stated that plaintiff sufficiently raised a triable issue as to whether

11  the prison officials knowingly failed to respond to his requests for help, despite Nevada

12  regulations providing the requisite standards for prisoner dental care.  *Id.* at 704 (citing *Jett v.*

13  *Penner*, 439 F.3d 1091, 1098 (9th Cir. 2006)).

14       In *Sanzo v. Cox*, 2015 WL 9598270, at *4-*8, *11-*12, the district court found that

15  plaintiff presented sufficient evidence of deliberate indifference to his severe dental problems to

16  defeat defendant's motion for summary judgment.  The evidence showed that the defendant

17  dental assistant at HDSP received several kites from plaintiff complaining of loose teeth that

18  caused him pain and affected his ability to sleep.  The dental assistant also received plaintiff's

19  emergency grievance to the corrections officer which put her on notice that plaintiff was

20  suffering from extreme pain, could barely eat, and that the pain had gotten so bad that he had to

21  pull out some of his teeth on his own. The dental assistant, herself, did not evaluate the plaintiff.

22  Nor did she send medical staff to evaluate him, or alert a supervisor to his claims.  Instead, she

23  told plaintiff that the dental process in his unit was very slow, but that the procedure was firm,

24  fair and consistent.  She gave the same response to subsequent kites from the plaintiff.  The court

25  found that this evidence could support a finding that the dental assistant knew of the serious risk

26  to defendant's health and blatantly disregarded that risk.  *Id.* at *12.

27

28

1    In *Antonetti v. Neven*, 2011 WL 4527413, at *3, the plaintiff alleged that he had been

2    seeking treatment for tooth decay since March 2008 and that as of October 2010, he had still not

3    been treated.  In holding that there were genuine issues of material fact that warranted denial of

4    defendant's motion for summary judgment, the court stated:

> Prison staff need not have expert medical training to know that once
> begun, tooth decay is a continual process leading to larger health problems and,
> often, excruciating pain.  While such decay may not normally be an emergency,
> the continual delay of treatment, especially when spread over years rather than a
> handful of months, turns 'mere delay' into a potentially 'substantially' harmful
> situation.  Prison officials should know that serious delays in treatment violate a
> patient's Eighth Amendment rights.

9    In *Watison v. Hanson*, 2010 WL 5071011 (D.Nev. Dec. 6, 2010), the district court held

10   that plaintiff's complaint alleged sufficient facts to state a claim for deliberate indifference to his

11   serious dental problems.  The plaintiff alleged that after being transferred to HDSP, he kited the

12   medical department to inform them that he needed pain medication and a dental appointment

13   because he had been scheduled to have his tooth pulled while at the prior prison.  The defendant

14   dentist responded: "You have to get back in line, every time you go to a new prison you must

15   wait for your turn just like everybody else ...."  Although plaintiff submitted at least five kites

16   requesting pain medication and a dental visit, the dentist repeatedly told him he would have to

17   wait his turn.  *Id.* at *2.

18   By contrast, the court in *Miles v. Daniels*, 231 Fed.Appx. 591, 2007 WL 1296733 (9th

19   Cir. May 2, 2007) (unpublished decision), affirmed summary judgment for the defendants where

20   the prison warden responded to each of plaintiff's complaints and gave several reasons why he

21   could not be moved to the top of the routine dental care list.  Similarly, in *Yoon v. Hickman*, 171

22   Fed.Appx. 541, 2006 WL 466646 (9th Cir. Feb. 24, 2006) (unpublished decision), the court

23   affirmed summary judgment for the defendant prison dentist where the evidence showed that he

24   saw the plaintiff nine times for his dental problems and offered dental treatment in the form of

25   medication, salt rinses, release from prison education programs to brush his teeth, and extraction

26   of those teeth that could not be saved.  The fact the plaintiff did not agree with the recommended

27   extractions indicated only a difference of opinion and not deliberate indifference by the dentist.

28

*Aytch*, *Sanzo*, *Antonetti*, and *Watison* did not involve final determinations that the defendants in those cases acted with deliberate indifference.  The courts' statements regarding the types of factual allegations or evidence that can support a finding of deliberate indifference by prison officials are nonetheless instructive.  Prison officials, including dental staff, have an obligation to provide reasonable treatment that can alleviate severe pain resulting from decaying, infected, or rotting teeth or gums.

Lack of financial resources to provide adequate medical care is not a defense to a claim for prospective injunctive relief because prison officials may be compelled to expand the pool of existing resources in order to remedy continuing Eighth Amendment violations.  *Peralta*, 744 F.3d at 1083 (citing *LaMarca v. Turner*, 995 F.2d 1526, 1536-39, 1542 (11th Cir. 1993)).[2]  In *Flynn v. Doyle*, 630 F.Supp.2d 987, 993 (E.D.Wis. 2009), the district court, quoting *Watson v. City of Memphis*, 373 U.S. 526, 537 83 S.Ct. 1314, 10 L.Ed.2d 529 (1963), stated that "matters of administrative convenience must ultimately give way when constitutional rights are in jeopardy.  '[V]indication of conceded constitutional rights cannot be made dependent upon any theory that it is less expensive to deny than to afford them.'"  The court also quoted *Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 705 (11th Cir. 1985) that "[l]ack of funds for facilities cannot justify an unconstitutional lack of competent medical care and treatment for inmates."  *Id.*

The record in this case shows that between January 21 and February 9, 2017, Plaintiff submitted four kites in which he complained of a decaying tooth and extreme pain, and requested that the tooth be pulled.  Sixty-five days passed between Plaintiff's initial kite on January 21, 2017 and his dental appointment on March 27, 2017.  This period of delay is longer than the estimated waiting period of four to six weeks that Dr. Bitar stated was routine.  There is no indication that the dental department or other prison officials otherwise responded to Plaintiff's complaints of extreme or severe pain prior to his appointment on March 27th.  Plaintiff alleges that Dr. Mangapit refused to treat more than one of his teeth on March 27, 2017, even though another molar was also decayed and causing him sharp pain.  Plaintiff's grievance regarding Dr.

---

[2] The court held, however, that lack of financial resources may provide a defense to an individual defendant in an action for damages, where that defendant does not control the granting of such resources and must make do with what is available.  *Peralta*, 744 F.3d at 1082-84.

Mangapit's refusal to treat his other tooth was upheld by the Department of Corrections on May 31, 2017 and Plaintiff was advised that the dental department had been notified, and he would be placed "on the list to be seen by the dental department regarding your dental problem.  Please wait until you get seen on your unit day." *Plaintiff's Motion* (ECF No. 8), *Exhibit A*.  It was reasonable for Plaintiff to believe that a dental appointment was being scheduled for him and that he did not have to submit a kite to obtain an appointment.  Once it became apparent, however, that no appointment had been scheduled, Plaintiff should have inquired about its status.  This arguably might have resulted in an appointment being scheduled.

Defendants appear to take the position that Plaintiff was required to submit a kite for a dental appointment after his grievance was upheld, despite the fact that he was told that the dental department had been notified and that he would be placed on the list for an appointment.  Defendant's position is unreasonable.  The Court cannot conclude on this record, however, that the failure to schedule a dental appointment after his grievance was upheld was the result of deliberate indifference.  The failure could have resulted from negligent miscommunication or lack of follow through.

Plaintiff alleged and testified that Dr. Mangapit and Dr. Sanders refused to treatment more than one tooth during his appointments on March 27, 2017 and December 11, 2017, even though he complained of severe pain in other teeth.  Neither Dr. Mangapit or Dr. Sanders testified at the hearing or provided any declaration contradicting Plaintiff's assertions in this regard.  Dr. Bitar testified that the dental department will treat one quadrant during a dental appointment, and that problems in other quadrants will be deferred to a follow-up appointment, which the inmate must request by kite.  The inmate decides which quadrant is causing him the most pain or problem and should be first treated.  Under this "quadrant policy," an inmate suffering severe pain in two or more quadrants could be delayed in obtaining treatment for a severe dental problem for a period of four to six weeks, or longer.  If the dentists actually follow a practice of treating only one tooth at an appointment, the delay in obtaining treatment for severely painful dental problems may be even longer, and more unreasonable.

17

After Dr. Mangapit left HDSP in or about August 2017, the dental department had only one full time dentist, Dr. Bitar, and one half-time dentist, Dr. Sanders, until late 2017 or early 2018 when Dr. Sanders started working full time. As of the date of the hearing, the dental department was still short the one-half dental position. This shortage in allocated staff, which itself is probably inadequate,[3] has caused further delay in inmates receiving dental treatment.

NDOC Administrative Regulation 631 states that "dental services should be timely, and include arrangements for handling urgent and emergent conditions."[4] Medical Directive 408 issued by Dr. Aranas in February 28, 2017 does not contain any express provisions for handling dental or medical emergencies. In any event, the senior institutional dentist, Dr. Bitar, was not aware of the existence of Medical Directive 408. There is no evidence that the HDSP dental department or Dr. Bitar have implemented any procedure for handling dental emergencies on an expedited basis. A fair reading of his testimony is that all inmate dental patients are subject to the "quadrant" treatment policy, and the dental appointments are scheduled based on the oldest kite being given the first available appointment date.

Dr. Bitar also provided a very narrow definition of what constitutes a dental emergency. He stated that pain does not qualify as a dental emergency. He did not qualify this statement by stating that severe or extreme pain can qualify as a dental emergency. Given the limited dental resources at HDSP and the manner in which dental services are provided, the Court will not infer a qualification to Dr. Bitar's statement that he did not express. To the extent that HDSP's dental staff, in fact, does not consider severe or extreme dental pain an emergency requiring expedited examination and treatment, it is contrary to law.

Dr. Bitar testified that HDSP does not employ a dental hygienist and does not have the equipment to provide routine dental cleaning or scaling that a patient at a private dental clinic

---

[3] A fair understanding of Dr. Bitar's testimony is that the allocated staff is only sufficient to allow the dentists to treat patients based on the "quadrant" policy.

[4] The prison at issue in *Peralta* "kept one waiting list for patients needing routine care and another list for patient's needing emergency care. If a prisoner's request was classified as an emergency, he was entitled to receive treatment ahead of others on the routine care list." 744 F.3d at 1090 (dissenting opinion). Despite this emergency list and his complaints of severe pain, the plaintiff allegedly had to wait several months for a dental appointment. 744 F.3d at 1081.

can obtain.  The Eighth Amendment does not require prison officials to provide such services.

*Peralta*, 744 F.3d at 186; *Hallett v. Morgan*, 296 F.3d at 745-46.  Such services may be

necessary, however, to treat severe dental conditions.  Plaintiff alleges that he has severe calculus

on his teeth, and that Dr. Sanders informed him that such calculus needs to be removed in order

to treat his decayed teeth, or to prevent further decay.  Dr. Bitar's somewhat adamant statement

that the dental department does not provide cleaning or scaling, causes doubt as to whether the

dentists would arrange for dental cleaning, scaling or removal of calculus even if it is needed to

correct or prevent severe decay and pain that is likely to develop in the relatively near future.

Although Plaintiff testified that Dr. Sanders told him on December 11, 2017 to wait until

after New Year's before submitting a kite to obtain another dental appointment, the Court is

doubtful that she made such a statement.  It seems more likely that Dr. Sanders would have

informed Plaintiff that because December 25th and January 1st fell on Mondays, dental

appointments would not be scheduled on those days and the waiting time for an appointment

would therefore be longer than normal.  Be that as it may, Plaintiff submitted kites on January 5

and 8, 2018 requesting follow-up dental appointments.  In his first kite, Plaintiff stated: "I have 2

painful cavities, multiple other cavities, substantial calculus build up, multiple missing molars."

Plaintiff requested that "[a] treatment plan be established, a full mouth x-ray be conducted, all

cavities be treated, partials be installed, and calculus be removed/treated."  *Defendants' Hearing*

*Exhibit 7*.  In his second kite on January 8, 2018, Plaintiff stated: "I have multiple cavities, 2 of

which are painful calculus build up, bacteria in my gums [and] missing molars."  He again

requested that a treatment plan be established.  Plaintiff testified at the January 31st hearing that

two teeth were presently causing him substantial pain.  He described his pain level as a "5" or

"6" on a scale of 1-10.

Plaintiff was not experiencing the extreme or severe pain in January 2018 that he had

previously reported before and after the March 27, 2017 dental appointment.  *See Defendant's*

*Exhibits 1*, *2*, *4*.  In his motion for preliminary injunction, filed November 2017, Plaintiff stated

that "[i]t has been well over 200 days since plaintiff was granted leave to be seen by prison

dental department.  In addition to the pain (which on a scale of 1 to 10 is a constant 5 to 7

reaching 10 at times) Plaintiff's cavities are discharging foul tasting fluid, which is a good indication of infection abscess." *Motion for Preliminary Injunction* (ECF No. 8), page 7 Although Plaintiff may not have been in severe or extreme pain after December 11, 2017, it is reasonable to believe that he still has serious dental problems and conditions, including multiple cavities, two particularly painful teeth, possible bacterial infection, and a serious build-up of calculus, all of which is leading to further deterioration of his dental condition, and which if not adequately treated, will again result in severe or extreme pain. Plaintiff should by now have had a follow-up dental appointment in response to his January 5, 2018 and January 9, 2018 kites. The parties are directed to advise the Court whether or not such an appointment has occurred.

## CONCLUSION

Based on the foregoing, the Court finds that Plaintiff is suffering from serious dental disease or conditions, including multiple cavities, excessive build-up of calculus, and possible bacterial infection, that if not adequately treated will likely continue to deteriorate and result in severe pain and related debilitating conditions such as greater difficulty chewing or eating. Plaintiff is therefore likely to suffer irreparable injury in the form of chronic and worsening dental pain, and the continued deterioration of his teeth and gums, if he does not receive timely and adequate treatment.

The authority to grant a preliminary injunction, particularly one imposing mandatory relief, is narrow. The Court has not been provided with an expert dental opinion as to what specific dental treatment Plaintiff needs. The Court, therefore, cannot order that any specific dental treatment be provided to Plaintiff. Defendants' dental department should, however, perform an adequate dental examination on Plaintiff, including taking any necessary x-rays, to diagnose his dental conditions, and determine what dental treatment is reasonably necessary. Defendant should provide prompt and reasonable treatment of dental conditions that are causing, or are likely to cause in the near future, severe pain and/or deterioration of Plaintiff's teeth or gums. Furthermore, treatment of dental conditions that are causing severe pain, or which will result in severe pain in the near future if not treated, should not be deferred for weeks or months based on a policy that limits treatment to "one tooth at a time," or "one quadrant at a time." Such

a treatment policy or procedure, as it relates to severely painful conditions that can be alleviated by prompt dental care, is contrary to the Eighth Amendment.  Accordingly,

**IT IS HEREBY RECOMMENDED** that Plaintiff Jesse Aron Ross's Motion for Preliminary Injunction (ECF No. 8) be **partly granted** as follows:

1.  Defendants should be ordered to have the prison dentist perform an adequate dental examination on Plaintiff, including taking any necessary x-rays, to diagnose his dental condition and to provide prompt and timely treatment for conditions that are causing, or are likely to cause in the near future, severe pain and deterioration of Plaintiff's teeth or gums.

2.  The foregoing dental examination should be conducted within 14 days of the entry of the preliminary injunction; unless Defendants certify in writing to the Court that such an examination has already occurred and that treatment has been provided or commenced, as necessary, pursuant to the examination findings.  A description of such examination and treatment should be provided in sufficient detail to support the certification.

3.  If it is determined that Plaintiff is experiencing severe pain from more than one tooth or dental condition, treatment of such conditions may not be deferred for weeks or months based on a policy or practice that limits the provision of treatment to "one tooth at a time," or "one quadrant at a time."  Instead, reasonably available dental treatment should be expeditiously provided to alleviate Plaintiff's severe pain.

Dated this 28th day of March, 2018.

_George Foley Jr._
GEORGE FOLEY, JR.
UNITED STATES MAGISTRATE JUDGE