UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

Jesse Aron Ross,

    Plaintiff

v.

Brian Sandoval et al.,

    Defendants

Case No.: 2:17-cv-02386-APG-GWF

**Order Granting in Part Plaintiff's Motion for Preliminary Injunction and Denying Plaintiff's Motion to File Supplemental Appendix**

[ECF Nos. 48, 56]

Plaintiff Jesse Aron Ross is an inmate at High Desert State Prison (HSDP). He is a registered "non-denominational" Buddhist[1] and is challenging, among other things, the denial of his request for the "common fare" menu that Jewish and Muslim prisoners receive.[2] He asserts that none of the diets available to him in prison is fully consistent with his beliefs, but that the common fare diet is the best compromise.[3] He contends that the denial of the common fare diet violates the Religious Land Use and Institutionalized Persons Act (RLUIPA), the Free Exercise Clause of the First Amendment, the Equal Protection Clause of the Fourteenth Amendment, and various state law torts. He states that any deprivation of constitutional rights is irreparable injury, and that the costs of placing him on the common fare diet are minimal compared to the infringement of his rights.[4] He seeks a preliminary injunction ordering the defendants to provide him with a diet that is compliant with his beliefs and to amend the religious diet policy to make it easier for inmates to request religious dietary accommodations.[5]

---

[1] ECF No. 49 at 4.
[2] ECF No. 48 at 3.
[3] *Id.* at 11–12.
[4] *Id.* at 14–15.
[5] *Id.* at 17–18.

The defendants respond that Ross has not shown a likelihood of success on the merits because the Nevada Department of Corrections (NDOC) already provides a religious diet to Buddhist inmates (the "alternative meatless diet"), and Ross's dietary requests are not religious in nature.[6] They also assert that Ross has not demonstrated that he is facing irreparable harm.[7] The defendants request that if I grant Ross's motion, I order only that Ross be placed on the alternative meatless diet (which he has never requested) and allow for Ross to submit a request to NDOC's religious review team to determine whether Buddhist inmates should be eligible for the common fare diet.[8]

**I.     ANALYSIS**

To qualify for a temporary restraining order or preliminary injunction, a plaintiff must demonstrate: (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm, (3) the balance of hardships favors the plaintiff, and (4) an injunction is in the public interest.[9] Alternatively, under the sliding scale approach, the plaintiff must demonstrate (1) serious questions on the merits, (2) a likelihood of irreparable harm, (3) the balance of hardships tips sharply in the plaintiff's favor, and (4) an injunction is in the public interest.[10]

Most requested injunctions are prohibitory, meaning they seek to maintain the status quo and prohibit the enjoined party from engaging in identified activities.[11] In contrast, a mandatory

---

[6] ECF No. 54 at 8–9.

[7] *Id.* at 13.

[8] *Id.* at 14.

[9] *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

[10] *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

[11] *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (en banc).

injunction "orders a responsible party to take action."[12]  Mandatory injunctions are "particularly disfavored."[13]  Where a party seeks a mandatory injunction, he "must establish that the law and facts clearly favor [his] position, not simply that [he] is likely to succeed."[14]

Additionally, in the context of a civil action challenging prison conditions, injunctive relief "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm."[15]  I must give "substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief."[16]  A preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion."[17]

### A.  Likelihood of Success on the Merits

Ross focuses his motion on his claim that the defendants violated RLUIPA by denying his request to receive the common fare diet.  Under RLUIPA, a government may not impose a substantial burden on the religious exercise of a confined person unless the government establishes that the burden furthers a "compelling governmental interest" and does so by "the least restrictive means."[18]  This "compelling government interest" and "least restrictive means"

---

[12] *Id.* (quotation omitted).
[13] *Id.* (quotation omitted).
[14] *Id.*
[15] 18 U.S.C. § 3626(a)(2).
[16] 18 U.S.C. § 3626(a)(1)(A).
[17] *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quotation and emphasis omitted).
[18] 42 U.S.C. § 2000cc-1(a)(1)–(2).

test replaced *Turner v. Safley*'s[19] "legitimate penological interest test."[20] Under its own terms, RLUIPA must be "construed broadly in favor of protecting an inmate's right to exercise his religious beliefs."[21] The inmate bears the first task of establishing that his religious exercise has been substantially burdened.[22] The government then must prove that the substantial burden on the inmate's religious practice both furthers a compelling governmental interest and is the least restrictive means of doing so.[23]

### 1. Religious Exercise

Under RLUIPA, "[t]he term 'religious exercise' includes any exercise of religion, whether or not compelled by, or central to, a system of religious belief."[24] "Although RLUIPA bars inquiry into whether a particular belief or practice is central to a prisoner's religion, . . . [it] does not preclude inquiry into the sincerity of a prisoner's professed religiosity."[25] Because RLUIPA is a guarantor of sincerely held religious beliefs, it may not be invoked simply to protect any "way of life, however virtuous and admirable, . . . if it is based on purely secular consideration."[26]

The defendants argue that Ross has not shown that his dietary requests are a religious exercise. They assert that Ross's requests for a plant-based diet are in line with Buddhist teachings, but that Ross's other requests (for a nature-based diet rich in fresh fruits and

---

[19] 482 U.S. 78, 89 (1987).
[20] *Warsoldier v. Woodford*, 418 F.3d 989, 994 (9th Cir. 2005) (citing 42 U.S.C. § 2000cc-1(a)).
[21] *Id.* at 995 (citing 42 U.S.C. § 2000cc-3(g)).
[22] *Id.* at 994.
[23] *Id.* at 995.
[24] 42 U.S.C. § 2000cc-5(7)(A).
[25] *Cutter v. Wilkinson*, 544 U.S. 709, 725 (2005).
[26] *Wisconsin v. Yoder*, 406 U.S. 205, 215 (1972).

4

vegetables and without eggs, chemical additives, preservatives, or processed sugars) are not religious in nature.

However, Ross has presented evidence showing that, from his first request for the common fare menu, his motivations have been religious. He stated in his request that his dietary needs were premised on his non-denominational Buddhist beliefs and the teachings of the spiritual leaders he follows.[27] Ross has submitted religious teachings that encourage the diet he is requesting.[28] It does not matter that, in RLUIPA's terms, Ross's diet was not "compelled by" or "central to" Buddhism. What matters is that Ross's request is based on his sincerely held religious beliefs, and that is what he has shown. I therefore find that he is likely to succeed in showing that his dietary request is a religious exercise.

### 2. Substantial Burden

While RLUIPA does not define what is a "substantial burden" on religious exercise, the Ninth Circuit has held that, in the context of a land-use suit brought under RLUIPA, a substantial burden "must impose a significantly great restriction or onus upon such exercise."[29] The burden must be more than a mere inconvenience.[30]

Ross argues that he has been forced to abandon an important tenet of his belief system because the defendants rejected his request to be placed on the common fare diet. In response, the defendants merely assert that there can be no substantial burden on religious exercise where no religious exercise exists.[31] Having concluded that Ross's request was likely based on a

---

[27] ECF No. 49 at 5–6, 55, 58.

[28] *Id.* at 9–48.

[29] *San Jose Christian Coll. v. City of Morgan Hill*, 360 F.3d 1024, 1034 (9th Cir. 2004).

[30] *Warsoldier*, 418 F.3d at 995.

[31] The cases the defendants rely on for this assertion are distinguishable. In those cases, the plaintiffs failed to describe why their requests were religious in nature, and the courts found there

5

sincerely held religious belief, I further conclude that Ross is likely to succeed in showing that the denial of his request substantially burdened this religious exercise.[32]

### 3. Compelling Government Interest

The defendants argue that the government has an interest in avoiding the administrative and financial costs of developing and implementing a new menu tailored to individual prisoners.[33] However, they do not argue a compelling interest in limiting the common fare diet to only Jewish and Muslim inmates, especially when faced with a sincere religiously motivated request from an inmate who is not Jewish or Muslim. While the interest in avoiding the costs of developing a new meal plan may be compelling, the defendants have not argued how that interest would be affected by Ross's request for the common fare menu, given that that menu has already been developed and implemented.

### 4. Least Restrictive Means

There exist less-restrictive means of achieving the government's interest in not developing a new meal plan. In fact, Ross did not initially request development of a new meal plan. He requested the common fare plan, detailing his religious beliefs and how the common fare menu was more in line with his beliefs than the alternative meatless diet.[34] A less-restrictive

---

was no burden on religious exercise. Here, however, Ross has shown that his requests are premised on his religious beliefs.

[32] *See Koger v. Bryan*, 523 F.3d 789, 798 (7th Cir. 2008) (finding a substantial burden where prison required clergy verification of religious diets, as applied to prisoner whose religion had no clergy and where dietary rules were not prescribed but left to individual conscience); *see also Nelson v. Miller*, 570 F.3d 868, 878–79 (7th Cir. 2009) (finding a substantial burden where Catholic prisoner was denied a vegetarian diet because no Catholic text required a vegetarian diet, despite verification from Catholic priests that some Catholics adhere to vegetarian diets as an act of penance).

[33] ECF No. 54 at 10–11.

[34] *See* ECF No. 49 at 53–58.

means of achieving the government's goal would be accommodating the inmate using the best available option. Ross attempted to reach that compromise with the common fare menu but was denied because a "Registered Buddhist does not qualify for common fare."[35] It is unclear why the government's interest must be met by denying an Ross's sincere request only because he is not Jewish or Muslim, especially considering that the common fare menu already exists. For the purposes of a preliminary injunction, Ross has shown a likelihood of success on the merits of his RLUIPA claim.

### B. Irreparable Harm

The Supreme Court has recognized the "basic doctrine of equity jurisprudence that courts of equity should not act . . . when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief."[36] A plaintiff therefore has the burden to establish that, absent a preliminary injunction, there is a likelihood—not just a possibility—that he will suffer irreparable harm.[37] The Ninth Circuit has stated "'that an alleged constitutional infringement will often alone constitute irreparable harm.'"[38] In the free speech context, the Supreme Court has held that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."[39]

Ross has presented evidence that he has abandoned sincerely held religious beliefs because his request for the common fare menu was denied. I have concluded that Ross is likely

---

[35] *Id.* at 59.

[36] *Younger v. Harris*, 401 U.S. 37, 43–44 (1971).

[37] *Winter*, 555 U.S. at 20–21.

[38] *Monterey Mech. Co. v. Wilson*, 125 F.3d 702, 715 (9th Cir. 1997) (quoting *Assoc. Gen. Contractors of Cal., Inc. v. Coal. for Econ. Equity*, 950 F.2d 1401, 1412 (9th Cir. 1991)).

[39] *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *accord Klien v. City of San Clemente*, 584 F.3d 1196, 1207–08 (9th Cir. 2009).

7

to succeed on the merits of his RLUIPA claim, and that conclusion, coupled with Ross's statement regarding the fact that his religious exercise has been burdened, demonstrates that Ross is likely to suffer irreparable harm in the absence of an injunction.

### C. Balance of Hardships and Public Interest

I consider the final two elements of the preliminary injunction test together. "In each case" where a court considers a motion for a preliminary injunction, "courts 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief,'" paying particular attention to the public consequences.[40]

The free exercise of one's religion is an important civil right. And Ross has shown that he has had to abandon the mindful, meditative eating practices that are important to his religious practice because he was denied the common fare menu. The defendants assert a countervailing interest in avoiding the financial and administrative burden of developing a new menu specifically for Ross. However, the defendants do not argue how they would be harmed by placing Ross on the common fare menu. The risk of harm to the defendants is minimal, especially considering that the common fare menu is served to other inmates at HDSP. When weighed against Ross's potential injury, the balance weighs in Ross's favor.

The public interest inquiry primarily focuses on the impact on non-parties, as opposed to parties.[41] "[I]t is always in the public interest to prevent the violation of a party's constitutional rights," and "[c]ourts considering requests for preliminary injunctions have consistently recognized the significant public interest in upholding First Amendment principles."[42] The

---

[40] *Winter*, 555 U.S. at 24 (quoting *Amoco Production Co. v. Village of Gambell, AK*, 480 U.S. 531, 542 (1987)).

[41] *Sammartano v. First. Jud. Dist. Ct.*, 303 F.3d 959, 974 (9th Cir. 2002).

[42] *Id.* (collecting cases).

defendants have not argued that an injunction would go against the public's interest. To the contrary, the public interest does not support allowing the defendants to enforce a policy that likely violates RLUIPA and the First Amendment. This factor also favors Ross.

## II. CONCLUSION

Ross has demonstrated that he is likely to succeed on the merits of his claim, that he is likely to suffer irreparable harm in the absence of an injunction, that the balance of equities tips in his favor, and that the public interest favors injunctive relief. However, because a preliminary injunction in this context must be narrowly drawn, I do not grant the entire relief Ross has requested in his motion. Instead, I hold only that the defendants must place Ross on the common fare menu until further order of the court.

IT IS THEREFORE ORDERED that Ross's motion for preliminary injunction **(ECF No. 48) is granted in part**. The defendants are ordered to take the steps necessary to immediately place Ross on the common fare menu plan until further order of the court or until Ross requests to be removed from that diet.

IT IS FURTHER ORDERED that Ross's motion for leave to file supplemental appendix brief **(ECF No. 56) is denied as moot.**

DATED this 19th day of October, 2018.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE